Joseph **ANDREW, Jr.,** Appellant,

v.

**STATE of Alaska,** Appellee.

No. A–201.

Court of Appeals of Alaska.

Jan. 25, 1985.

---

Karen A. Kirby, Bethel, for appellant.

Bryan E. Schuler, Asst. Dist. Atty., Laurie H. Otto, Dist. Atty., Bethel, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Joseph Andrew, Jr., pled no contest to driving while intoxicated (DWI). AS 28.35.-030. Andrew reserved his right to appeal the denial of his motion to dismiss the complaint on the ground that, pursuant to Alaska Criminal Rule 45, trial was not held within 120 days of his arrest. *See Oveson v. Anchorage,* 574 P.2d 801, 803 and n. 4 (Alaska 1978); *Cooksey v. State,* 524 P.2d 1251, 1255–57 (Alaska 1974).

Andrew was arrested in Bethel for DWI on June 6, 1983. After several delays Andrew's arraignment was continued to August 17. When Andrew did not appear on the 17th, attorney Karen Kirby informed the court that a man named Andrew had

called her that morning from McGrath. Kirby said Andrew had not yet retained her as counsel. Andrew's arraignment was reset for August 24. After Andrew failed to appear on August 24, he was arrested and subsequently posted bail. On August 31, Blair McCune, an attorney from Kirby's office, filed an appearance as counsel for Andrew and entered a not guilty plea on Andrew's behalf. Andrew was not personally present. The court set a trial date of November 14, a period of 161 days after Andrew's arrest. No objection to the trial date was made. On November 14, McCune moved to dismiss the complaint on the ground that Andrew's right to a speedy trial under Criminal Rule 45 had been violated. Magistrate Curda denied the motion, finding that:

> [B]ased on the early involvement of Ms. Kirby's office that under *DeMille* that defendant's attorney knew or should have known ... what the four-month date was, and had some awareness of that ... on ... August 31st when the not guilty plea was entered....

The single issue in this case is the propriety of Magistrate Curda's finding that McCune's failure to object to the November 14, 1983, trial date constituted a waiver of Andrew's Rule 45 right to a speedy trial.[1] We conclude that Andrew could not properly be held to have waived his right to a speedy trial unless the record supported a finding that, at the time Andrew's trial was set for November 14, 1983, his counsel, McCune, actually knew that the trial date was beyond the permissible 120-day speedy trial period. Since the trial court's finding that Andrew waived his right to a speedy trial was apparently based on the assumption that either a knowing or negligent failure to raise the issue of speedy trial would amount to a waiver of that issue, we must remand this case for reconsideration.

Our conclusion in this case is based on *DeMille v. State,* 581 P.2d 675 (Alaska

---

1. Unless the trial court's finding of a waiver is upheld, no more than fifteen days of the period between Andrew's arrest and the date of his trial could be properly excluded under the express provisions of Criminal Rule 45.

1978), and its progeny. In *DeMille,* the trial court mistakenly set a trial date that was beyond the allowable 120-day period. Although DeMille's case had already been pending for a considerable time when the trial date was set, the trial court was apparently under the impression that the speedy trial period had recently commenced. DeMille's attorney had attended the defendant's initial arraignment and was therefore presumably aware of the commencement date of the 120-day period. *Id.* at 676. He nevertheless failed to object to the trial date and further failed to raise the issue of speedy trial at a subsequent omnibus hearing, which was held before the 120-day rule expired. *Id.* at 677 n. 6. Under these circumstances, the supreme court held that DeMille's counsel had waived DeMille's right to a speedy trial under Rule 45 because he "knew or should have known" that the trial date violated Rule 45. *Id.* at 677.

We do not believe that *DeMille* can properly be read to establish a rule that the right to a speedy trial under Rule 45 will invariably be waived if the defendant's attorney negligently fails to assert that right at the time a trial date is first set in open court. The supreme court's holding in *DeMille* considered the totality of the circumstances in that case. *Id.* A review of the facts in *DeMille* indicates that DeMille's counsel, since he personally participated in the initial court proceedings in the case, must have had actual knowledge that the speedy trial rule began running well before the hearing at which DeMille's trial date was set. In context, the supreme court's conclusion that DeMille's counsel "knew or should have known" of the Rule 45 violation reflects the court's judgment that, at the time the superior court set the trial date, it was presumably obvious to DeMille's counsel that the date would violate Rule 45. Thus, in *DeMille* the supreme court did no more than express its willingness to infer actual knowledge from the uncontested facts presented in the record.

Subsequent decisions of the supreme court that discuss and apply *DeMille* provide strong support for a narrow reading of that case. In *Ahmaogak v. State,* 595 P.2d 985, 987 n. 3 (Alaska 1979), defendant's attorneys acknowledged that they did not object when the court set a trial date beyond the permissible 120-day limit. However, they represented that when the court set the trial date, they had not been aware that the date would violate the speedy trial rule since they were not actually aware then that the defendant had previously been served with a summons and complaint, which commenced the running of the 120-day speedy trial period well before the hearing at which the trial date was set. In deciding *Ahmaogak,* the supreme court made no inquiry as to whether Ahmaogak's attorneys had been negligent in their failure to know of the correct starting date for the 120-day rule. Instead, the court accepted without question the representations of counsel that they did not have actual knowledge of the prior summons and complaint.

In *Westdahl v. State,* 592 P.2d 1214, 1218 (Alaska 1979), the court came to a similar conclusion. Moreover, the interpretation given by the supreme court to *DeMille* in *Westdahl* makes it clear that the court read *DeMille* to require a knowing waiver of speedy trial rights. The court in *Westdahl* stated:

> [W]e have held that where defense counsel is present at a trial setting and is aware that the date for trial falls outside the permissible 120-day period, a failure to object constitutes a waiver.

*Westdahl,* 592 P.2d at 1218, *citing DeMille v. State,* 581 P.2d 675. The court further stated:

> In order to ascertain whether a *DeMille* waiver occurred, it is necessary to ascertain whether the attorney who represented Westdahl at the April 22, 1977 arraignment *was then aware* of the earlier arrest and that such arrest was on a charge arising out of the same conduct which was the basis for the state OMVI complaint. If so, we hold that Westdahl waived the commencement of the 120-day period on February 12, 1977. If the at-

torney *was not aware* of the earlier arrest or *was not aware* it arose out of the same conduct which was the basis for the latter charge, there was no waiver, and the conviction must be reversed for violation of the provisions of Rule 45. *Westdahl v. State*, 592 P.2d at 1218 (emphasis added).

Thus, although it is possible to read the supreme court's decision in *DeMille v. State* as implying that waiver of a defendant's right to a speedy trial under Rule 45 will occur if the defendant's counsel negligently fails to assert that right when a trial date is set in open court, such an interpretation would be inconsistent with the views subsequently expressed by the court in *Ahmaogak* and *Westdahl*. *DeMille, Ahmaogak* and *Westdahl* can be reconciled only if *DeMille* is read to mean that, absent extraordinary circumstances,[2] a defendant's right to a speedy trial is relinquished only when it is knowingly waived by the defendant or the defendant's counsel. Knowledge may, of course, be inferred from the record.

■ In this case, Blair McCune, Andrew's counsel at the time the November 14, 1983, trial date was set, did not personally participate in Andrew's initial court proceedings. The question whether McCune was actually aware of a potential Rule 45 violation when the trial date was set is contested. The trial judge in this case did not resolve this dispute. Instead, the judge interpreted *DeMille* to establish a negligence standard for waiver of the right to a speedy trial under Rule 45. Apparently relying on a finding of negligence,

the court held that Andrew's right to receive a speedy trial had been waived. Because the trial court relied on an incorrect interpretation of *DeMille* in concluding that Andrew waived his right to a speedy trial, we must remand this case. On remand, the court should determine whether McCune was aware, when the court set the date for Andrew's trial, that the trial date was beyond the permissible 120-day speedy trial period. A waiver of speedy trial may be found only if the court determines that McCune was aware of the violation at that time or that, given the circumstances actually known to McCune, the violation should have been apparent to him.

■ We do not imply that trial courts are without authority to compel timely objections when trial dates are set beyond the 120-day speedy trial limit. We are unaware of any reason why defense counsel could not properly be compelled, by an express pretrial order, to raise any speedy trial objections either at the time a trial date is set or within a reasonable period of time thereafter. Nothing in our decision precludes the use of such an order, which, we believe, would effectively curtail abuse of the speedy trial rule. We hold only that Criminal Rule 45 does not, in and of itself, impose a general duty requiring defense counsel to affirmatively object to a trial date in order to preserve the defendant's speedy trial rights. Under *DeMille, Ahmaogak,* and *Westdahl,* an affirmative duty to object arises only when defense counsel is actually aware that the court has set a date beyond the 120-day speedy trial limit.[3]

---

2. *See James v. State*, 567 P.2d 298, 300 (Alaska 1977) (holding that a defendant's right to a speedy trial under Rule 45 is irrevocably waived if no speedy trial objection is raised prior to the beginning of trial, regardless of whether good cause existed for the lack of objection); *O'Dell v. Anchorage*, 573 P.2d 1381, 1384 (Alaska 1978) (finding a waiver of Rule 45 where a defendant's non-opposition to a motion for continuance filed by the state led the state and the trial court to rely on the belief that the defendant consented to a trial date beyond the 120-day speedy trial limit).

3. It is arguable that *DeMille, Ahmaogak,* and *Westdahl* stand for an even narrower proposition, since all three cases deal with situations involving failure to object to a trial date set in open court. Under such circumstances, a knowing failure to object could be viewed as an affirmative acceptance of the trial date, which would estop the defense from raising subsequent objections on speedy trial grounds. Since the present case involves a trial date set in open court, we need not determine whether the supreme court's holdings in *DeMille, Ahmaogak,* and *Westdahl* would apply to cases involving trial dates set by written order.

The case is REMANDED for reconsideration in light of this opinion.

SINGLETON, J., concurs.

SINGLETON, Judge, concurring.

I reluctantly join in this decision because it attempts to carry out what the supreme court apparently intended in *Ahmaogak v. State*, 595 P.2d 985 (Alaska 1979), and *Westdahl v. State*, 592 P.2d 1214 (Alaska 1979). My reservations are based upon an inability to reconcile this holding with other decisions of the Alaska Supreme Court construing Rule 45 and particularly the court's stated preference for bright line rules. *See, e.g., State v. Clouatre*, 516 P.2d 1189, 1191 (Alaska 1973).

The trial court rejected Andrew's Rule 45 challenge in reliance on *DeMille v. State*, 581 P.2d 675 (Alaska 1978), and applied a negligence standard to determine whether defendant's counsel's failure to object to setting the trial date beyond the 120-day period prescribed in Rule 45 "waived" the defendant's right to seek dismissal based upon the rule. The *DeMille* court's use of the phrase "knew or should have known" supports the trial court's decision in this case. I agree with the majority, however, that subsequent decisions of the Alaska Supreme Court seem to indicate a departure from *DeMille*. The majority concludes, based on *Ahmaogak* and *Westdahl*, that acquiescence in a trial setting in violation of the rule will not forfeit a defendant's rights under the rule unless counsel in fact knows that the trial setting is beyond the period permitted by the rule and nevertheless voluntarily and intelligently accepts the new trial date. In effect the court reads *Ahmaogak* and *Westdahl* as adopting a constitutional waiver rule for Criminal Rule 45. An acquiescence will only constitute a waiver if it is the conceptual equivalent of an implied consent to a continuance. *See O'Dell v. Anchorage*, 573 P.2d 1381, 1384–85 (Alaska 1978). Since extensive evidentiary hearings will be needed to determine counsel's actual knowledge at the time he or she participates in a trial-setting conference, this portends a very poor allocation of judicial resources particularly where those resources must be allocated in rural Alaska.[1]

I would therefore strongly urge the Alaska Supreme Court to grant a hearing in this case and adopt either (1) a rule that counsel's acquiescence in a trial-setting conference does not "waive" the benefits of the rule unless under the totality of the circumstances the additional time constitutes a continuance granted for good cause; or (2) a forfeiture rule. Either alternative would be better than the rule adopted in this case.

To establish a context for further analysis, it is necessary to distinguish between two related but distinct ways in which a criminal defendant may "waive," *i.e.*, lose the ability to assert, a constitutional or statutory right: waiver and forfeiture. Use of the term "waiver" to describe these very different concepts has led to much confusion in interpreting the reported cases. A true constitutional waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). Such a

---

1. Since an evidentiary record that would support an inference of negligence will always support an inference of actual knowledge, this court's conclusion that actual knowledge is required for an effective "waiver" will hardly resolve these particular Rule 45 controversies. *See, e.g., Weston v. State*, 682 P.2d 1119, 1122 (Alaska 1984) (evidence that a reasonable person might have believed in the necessity of using deadly force also provides circumstantial evidence that a specific person held such a belief), and *cf. Kimoktoak v. State*, 584 P.2d 25, 31–33 (Alaska 1978) (court requires jury to find actual knowledge but apparently would permit inference of actual knowledge from circumstances which would lead a reasonably prudent person to have knowledge). Permitting an inference of a specific person's actual knowledge, when in light of the totality of the circumstances, a reasonably prudent person would have had the requisite knowledge, is consistent with the general rule that a knowing, intelligent and voluntary waiver of constitutional rights may be inferred from circumstantial evidence. *See, e.g., North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286, 292 (1979); *Lemon v. State*, 654 P.2d 277, 280 (Alaska App. 1982).

waiver is difficult to establish. It cannot be inferred from a silent record and courts should indulge every reasonable presumption against it. *See Barker v. Wingo,* 407 U.S. 514, 526–27, 92 S.Ct. 2182, 2189–90, 33 L.Ed.2d 101, 114 (1972). Waiver must be shown in order to establish the loss of the constitutional right to counsel, *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70, 75–77 (1962); the right against self-incrimination by one in custody, *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 724 (1966); the right not to be placed twice in jeopardy, *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); and the right to a speedy trial, *Barker v. Wingo,* 407 U.S. at 525, 92 S.Ct. at 2189; *Rutherford v. State,* 486 P.2d 946, 949–50 (Alaska 1971). Apparently, the majority has assumed that a rule of constitutional waiver applies to this case.[2]

The second concept relevant here is forfeiture,[3] the loss of a right through one of the following: (1) failure to timely assert it; (2) failure to object to its violation; or (3) actions inconsistent with its assertion, such as a plea of guilty. *See Lemon v. State,* 654 P.2d 277, 279 (Alaska App.1982); Westen, *Away From Waiver: A Rationale for Forfeiture of Constitutional Rights in Criminal Procedure,* 75 Mich.L.Rev. 1214 (1977). Forfeiture is found where a defendant fails to comply with a contemporaneous objection rule. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (defendant forfeits right to challenge voluntariness of his confession by failing to move to suppress the confession pre-trial as required by court rule). Forfeiture is also the standard applied to loss of the privilege against self-incrimination in the absence of a timely assertion by those not in custody. *Minn v. Murphy,* — U.S. —, —, 104 S.Ct. 1136, 1142, 79 L.Ed.2d 409, 411 (1984); *Garner v. United States,* 424 U.S. 648, 654 and n. 9, 96 S.Ct. 1178, 1182 and n. 9, 47 L.Ed.2d 370, 377 (1976).

A forfeiture rule is generally applied where the person giving up the right, benefit or opportunity has reasonable access to counsel and a reasonable opportunity to assert the right but fails to do so. *See, e.g., McCracken v. State,* 685 P.2d 1275, 1281–83 (Alaska App.1984), *discussing* Westen & Mandell, *To Talk, to Balk or to Lie: The Emerging Fifth Amendment Doctrine of the "Preferred Response,"* 19 Amer.Crim.L.Rev. 521 (1982). In order to sustain its burden to establish a forfeiture, the state need only show that the defendant had an opportunity to assert a right or object to its violation and failed to do so, or acted in a manner inconsistent with the assertion of the right. Forfeitures may be

**2.** An intermediate concept is a voluntary relinquishment or surrender by consent. This is the test applied to a confession which surrenders fifth amendment rights, *see Henderson v. Morgan,* 426 U.S. 637, 644–45, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108, 114 (1976), and a "consent" which surrenders fourth amendment rights to prevent a search, *see Schneckloth v. Bustamonte,* 412 U.S. 218, 222–23, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854, 860 (1973). The state has the burden of proving the voluntariness of a confession or a consent to a fourth amendment search. Precisely what the state must prove is, however, in substantial doubt. *See* Grano, *Voluntariness, Free Will, and the Law of Confessions,* 65 Virginia L.Rev. 859 (1979) (discussing voluntary confessions); 2 W. LaFave, *Search & Seizure* § 8.1 (1978) (discussing consent as validating a fourth amendment search). In Alaska, the state apparently sustains its burden of proving the voluntariness of a confession if the court finds that the person confessing was of sound mind and that his statements were "not the product of duress or coercion on the part of the police." *Stobaugh v. State,* 614 P.2d 767, 771 (Alaska 1980). It appears that a finding that the defendant was competent, and that his decision was not the product of duress or coercion, would also meet the state's burden of establishing a consent to a fourth amendment search. *See Phillips v. State,* 625 P.2d 816, 817 (Alaska 1980); *Brown v. State,* 684 P.2d 874, 880 (Alaska App. 1984). *But see Robinson v. State,* 578 P.2d 141, 143–44 (Alaska 1978) (consent cannot be inferred solely from lack of objection).

**3.** In *Lemon v. State,* 654 P.2d at 279, we recognized another concept, that of "estoppel." A finding that the opposing party may reasonably rely on the other party's failure to object frequently supports a court's decision to prevent him from acting inconsistently with his representation. *See O'Dell v. Anchorage,* 573 P.2d 1381, 1384–85 (Alaska 1978).

inferred from a silent record. *See generally* Saltzburg, *Pleas of Guilty and the Loss of Constitutional Rights: The Current Price of Pleading Guilty*, 76 Mich.L.Rev. 1265 (1978); Westen, *Forfeiture By Guilty Plea—A Reply*, 76 Mich.L.Rev. 1308 (1978).

At common law, a majority of state and federal courts held that a defendant's constitutional right to speedy trial was forfeited unless demanded. *See* Annot., 57 A.L. R.2d 302, 306 (1958 and Supp.1984). In *Barker v. Wingo,* the Supreme Court held that the constitutional right to speedy trial could not be forfeited but could only be lost through a knowing and intelligent waiver. 407 U.S. at 525–26, 92 S.Ct. at 2189. *See also Rutherford v. State,* 486 P.2d at 949–50. The United States Supreme Court recognized, however, that through statutes or court rules, a jurisdiction could adopt specific standards to insure a more expeditious trial than the United States Constitution would require. 407 U.S. at 523, 92 S.Ct. at 2188. *See State v. Clouatre,* 516 P.2d at 1191 (120-day period under Alaska speedy trial rule only a basic datum, considerably longer period could elapse before trial without resultant unfairness to the accused).

Understandably, the United States Supreme Court expressed no opinion in *Barker v. Wingo* or in subsequent cases as to what standards should govern loss of rights derived from speedy trial statutes or court rules. The majority of jurisdictions apparently apply a forfeiture rule called the demand-waiver rule in those circumstances. *See* Annot. 57 A.L.R.2d at 326, Supp. at 210. A minority of jurisdictions, including Alaska, have adopted statutes or court rules based upon the American Bar Association Project on Standards for Criminal Justice, Standards Relating to Speedy Trial § 2.1, commentary at 14–16 (Approved Draft 1968).[4]

Under the ABA Standards, the defendant is under no obligation to demand a jury trial within the period prescribed by Rule 45. ABA Standard 2.2 (1968), 12–2.2 (1978). Alaska Criminal Rule 45 was derived from the 1968 ABA Standards. *Peterson v. State,* 562 P.2d 1350, 1357 (Alaska 1977). In *Peterkin v. State,* 543 P.2d 418, 422 (Alaska 1975), the Alaska Supreme Court found that demand for a speedy trial was not a condition precedent to finding a violation of Rule 45:

> [W]e feel that it is too much to expect of human nature that a defendant must demand a speedy trial.... Under our system of criminal justice, it is the prosecution which initiates a case and which has the power of going forward with it.... We, therefore, reaffirm ... that the burden is upon the state to give a speedy trial or be denied the power to prosecute.

543 P.2d at 422, *quoting Rutherford v. State,* 486 P.2d 946, 950 (Alaska 1971) (footnote omitted).[5]

In most jurisdictions with rules or statutes based on the ABA Standards, the courts have held that a mere acquiescence in the setting of a trial date beyond the period for speedy trial by, for example, failure to object, does not constitute a waiver. *See, e.g., State v. Zaehringer,* 306 N.W.2d 792, 795 (Iowa 1981); *People v. Gallegos,* 560 P.2d 93, 94 (Colo.1977); *State*

---

**4.** The ABA Standards have been revised but the standards from which Rule 45 was derived have not been substantively changed. *See* ABA Standards for Criminal Justice Relating to Speedy Trial § 12–1.1 *et seq.* (Approved Draft 1978).

**5.** Nevertheless a defendant forfeits his speedy trial claim if he does not move for a dismissal of the charges prior to plea of guilty or commencement of trial. ABA Standard 4.1 (1968); Alaska R.Crim.P. 45(f); *James v. State,* 567 P.2d 298 (Alaska 1977). Both ABA Standard 4.1 (1968) and Rule 45(f) speak of a waiver, but in context it appears clear that a forfeiture rule applies. *See James v. State,* 567 P.2d 298, 300–01 (Alaska 1977) (Rabinowitz, J., dissenting) (no

evidence that James' attorney knew of Rule 45 problem until after voir dire or intentionally delayed making his motion until thereafter). *Cf. Snyder v. State,* 524 P.2d 661, 664 (Alaska 1974) (standards for determining waiver of fundamental constitutional rights inapplicable to waiver of right to speedy trial under Rule 45). A major difficulty in reconciling the cases discussing defendant's surrender of the right to assert a Rule 45 defense lies in the ambiguous use of the term waiver. Recognition of the distinctions between waiver, consent, forfeiture and estoppel would remove a substantial amount of ambiguity from the decided cases.

*v. Ansley,* 349 So.2d 837, 839 (Fla.App. 1977); *State v. Johnson,* 201 Neb. 322, 268 N.W.2d 85, 87 (1978); *State v. Singer,* 50 Ohio St.2d 103, 362 N.E.2d 1216, 1219 (1977); *Commonwealth v. Brown,* 264 Pa. Super. 127, 399 A.2d 699, 702 (1979). These decisions are based on the same principle underlying rejection of the demand-waiver rule, namely that the state, not the defendant, has the responsibility for bringing the defendant to trial within the specified period. *State v. Zaehringer,* 306 N.W.2d at 795.

A refusal to consider mere acquiescence to a trial date as a "waiver" also serves the purpose of protecting the integrity of the calendaring system by strictly limiting continuances. The ABA standard from which Rule 45 was derived excludes from a speedy trial calculation:

> The period of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel. A defendant without counsel should not be deemed to have consented to a continuance unless he has been advised by the court of his right to a speedy trial and the effect of his consent.

ABA Standard 2.3(c) (1968). This provision in the standard on the unrepresented defendant was intended to protect the unrepresented defendant from forfeiting a prompt trial in ignorance of his rights. ABA Standard 2.3(c) commentary at 28.

> Another ABA standard provided:
>
> 1.3 Continuances.
>
> The court should grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecution or defense, but also the public interest in prompt disposition of the case.

The reasons for this standard were:

> In some courts continuances in criminal cases are routinely granted upon mo-

tion of either the prosecuting attorney or the defendant if the other party consents.... The standard emphasizes that it is the responsibility of the court to make an independent determination as to whether there is in fact good cause for the continuance and to grant a continuance only for so long as is necessary under the circumstances. Implicit in the standard is the notion that the need for prompt disposition of criminal cases transcends the desires of the immediate participants in the proceedings.

ABA Standard 1.3 and commentary at 13 (Approved Draft 1968).

The Alaska Supreme Court incorporated these two standards into Rule 45 with minor modifications.[6] It excludes from Rule 45 calculation:

> The period of delay resulting from an adjournment or continuance granted at the timely request or with the consent of the *defendant and his counsel.* The court shall grant such a continuance only if it is satisfied that the postponement is in the interest of justice, taking into account the public interest in the prompt disposition of criminal offenses. A defendant without counsel shall not be deemed to have consented to a continuance unless he has been advised by the court of his right to a speedy trial under this rule and of the effect of his consent.

Alaska R.Crim.P. 45(d)(2) (emphasis supplied).

The court also adopted Rule 45(e) which provides:

> *Rulings on Motions to Dismiss or Continue.* In the event the court decides any motion brought pursuant to this rule, either to continue the time for trial or to dismiss the case, the reasons underlying the decision of the court shall be set forth in full on the record.

---

**6.** Where a defendant is represented by counsel, the ABA standards permit either defendant or counsel to consent to a continuance. Rule 45(d)(2) would apparently require both defendant *and* counsel to consent. The Alaska Supreme Court apparently did not consider this change significant. *O'Dell v. Anchorage,* 573

P.2d 1381 (Alaska 1978) (consent in the form of written nonopposition filed pretrial). *But see Henson v. State,* 576 P.2d 1352, 1356 n. 9 (Alaska 1978) (where continuance requested by defense counsel during hearing and defendant is present, his consent will be presumed in the absence of an objection).

It could be inferred from these rules that the trial court should not grant continuances even on stipulation unless satisfied that good cause exists. *See also* Criminal Rule 45(d)(3) which places further restrictions on the prosecution's right to a continuance. It is based on ABA Standard 2.3(d).

Had the supreme court interpreted these rules in that way, then a defendant's acquiescence in a trial date beyond the 120-day period, no matter how knowing, intelligent and voluntary, should not be held to waive speedy trial because a knowing acquiescence would be the legal equivalent of a stipulation to a continuance and finding such a waiver would accomplish indirectly what the rule's restrictions on continuances preclude from being directly accomplished—stipulated continuances not supported by good cause.

Thus far, however, the supreme court has not interpreted the continuance rules in that way. In *O'Dell v. Anchorage*, 573 P.2d 1381 (Alaska 1978), the prosecution sought a continuance because the investigating officer was on an extended vacation. The defendant filed a notice of nonopposition, Criminal Rule 40(d), and the case was continued from August 10 to September 8. The record does not indicate that the trial court made an express finding that the reason for the continuance constituted good cause under Rule 45(d)(3)(a) and 45(d)(7). The trial court later rejected O'Dell's motion to dismiss under Rule 45. O'Dell challenged this finding on appeal but the supreme court affirmed:

> The trial court found that O'Dell's non-opposition to the requested continuance was tantamount to consent, thereby waiving his Rule 45 rights for that period under 45(d)(2). O'Dell argues that since Rule 40 of the Alaska Rules of Criminal Procedure requires him to file a non-opposition, such non-opposition cannot be construed as consent. Rule 40(d) provides that whenever a motion is filed, the opposing party must serve either a non-opposition or a memorandum in opposition. O'Dell could have opposed the prosecution's motion. He would then

have had the benefit of a hearing to determine whether the prosecution's reason for the continuance was within the statutorily excluded periods urged by the prosecution, Rule 45(d)(3)(a) and 45(d)(7). O'Dell's non-opposition was tantamount to consent, and was relied upon by the prosecution as such. Therefore, the period between August 10, when the continuance was granted, and September 6, when Smith returned, was excluded from the 120 days computation as a stipulated continuance under Rule 45(d)(2). *See Peterkin v. State*, 543 P.2d 418 (Alaska 1975).

573 P.2d at 1384 (footnote omitted).

*O'Dell* is significant for three reasons: first, although the supreme court characterized defense counsel's actions as a waiver, the court applied a forfeiture standard since it did not undertake an inquiry into O'Dell's or his counsel's understanding of the effect of the continuance on defendant's speedy trial rights. Second, despite the Alaskan modification of the ABA standard in Rule 45 which requires that both O'Dell and his counsel consent to the continuance, the court found consent in the attorney's written nonopposition without inquiring whether O'Dell joined in the consent. Finally, *O'Dell* may be read as holding that an objection to the continuance was a prerequisite to a court determination that the reason for the continuance satisfied the good cause limitations of Rule 45(d)(3)(a) and 45(d)(7). It does not appear that the trial court ever considered whether an investigating officer's vacation necessarily qualified as good cause for a continuance or the exclusion of time under the rule. Nor does the supreme court directly address the question of a foreseeable vacation as good cause for a continuance.

Following its decision in *O'Dell*, the court held that failure to object to the setting of a trial date beyond the period for speedy trial results in a forfeiture of the right to an earlier trial. *DeMille v. State*, 581 P.2d 675, 677 (Alaska 1978). In so doing the court has joined with a minority of those jurisdictions which adopted the

ABA Standards and the majority of all jurisdictions. *See In re Bishop*, 201 Cal. App.2d 604, 20 Cal.Rptr. 186, 189–90 (Dist. Ct.App.1962); *Smith v. State*, 266 Ind. 633, 366 N.E.2d 170 (1977).

The apparent forfeiture rule adopted in *DeMille* did not survive unscathed. *See Ahmaogak v. State*, 595 P.2d 985 (Alaska 1979), and *Westdahl v. State*, 592 P.2d 1214 (Alaska 1979). In *DeMille*, the court ordered a determination based on whether the attorney knew or should have known of the 120-day rule problem. 581 P.2d at 677.[7] In *Westdahl* and *Ahmaogak*, however, the court seems to require a true constitutional waiver, *i.e.*, that the attorney have actual knowledge that the trial setting would be outside the 120-day limit and in effect "consent" to a continuance. *Westdahl v. State*, 592 P.2d at 1218; *Ahmaogak v. State*, 595 P.2d at 987 n. 3. I cannot reconcile the language in *DeMille* with that in *Westdahl* and *Ahmaogak*. Nor can I reconcile the implication that a "knowing waiver" is required by the supreme court's discussion of analogous issues in *O'Dell*, 573 P.2d at

1384, *James v. State*, 567 P.2d 298, 300 (Alaska 1977), and *Snyder v. State*, 524 P.2d 661, 664 (Alaska 1974).

The use in *DeMille* of the phrase "knows or should know" suggests a negligence standard. *See Reynolds v. State*, 655 P.2d 1313, 1316 (Alaska App.1982) (interpreting the phrase "knew or reasonably should have known" as a negligence standard). It would not be unreasonable to conclude that defense counsel is under both a duty to the defendant to protect the defendant's rights to a prompt trial under Criminal Rule 45 and a duty to the administration of justice as an officer of the court to warn the trial court that a proposed trial date is untimely in order to ensure a speedy trial. The two duties are not in conflict. In the performance of those duties, counsel should interview the defendant regarding the time of arrest so that he or she may intelligently participate in trial scheduling conferences.[8]

The adoption of a forfeiture standard would not produce the problems inherent in

---

7. In its application of Rule 45 to trial dates agreed upon at trial-setting conferences, the supreme court has implicitly rejected both a forfeiture rule, *see Ahmaogak v. State*, 595 P.2d 985, 987 n. 3 (Alaska 1979), *but see O'Dell*, 573 P.2d at 1384, and *James v. State*, 567 P.2d at 300, as well as a waiver rule, *see Snyder v. State*, 524 P.2d at 664. I do not believe a rule based on voluntariness or consent would be appropriate because its parameters are so unclear and a rule intended to insure that someone without counsel is competent and protect him against duress and coercion seems inappropriate if applied to an attorney's actions at a trial-setting conference.

8. The Restatement (Second) of Torts § 12 (1965) reads:

Section 12. Reason to Know; Should Know (1) The words "reason to know" are used throughout the Restatement of this Subject to denote the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists or that such a person would govern his conduct upon the assumption that such fact exists.
(2) The words "should know" are used throughout the Restatement of this Subject to denote the fact that a person of reasonable prudence and intelligence or of the superior

intelligence of the actor would ascertain the fact in question in the performance of his duty to another, or would govern his conduct upon the assumption that such fact exists.
The comment to this section provides:
Both the expression "reason to know" and "should know" are used with respect to existent facts. These two phrases, however, differ in that "reason to know" implies no duty of knowledge on the part of the actor whereas "should know" implies that the actor owes another the duty of ascertaining the fact in question. "Reason to know" means that the actor has knowledge of facts from which a reasonable man of ordinary intelligence or one of the superior intelligence of the actor would either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist. "Should know" indicates that the actor is under a duty to another to use reasonable diligence to ascertain the existence or nonexistence of the fact in question and that he would ascertain the existence thereof in the proper performance of that duty. Both the phrases "reason to know" and "should know" are used throughout the Restatement of Torts in the same sense as they are used in the Restatement of Agency. (*See* Restatement of Agency, Second Section 9).
Restatement (Second) of Torts § 12 comment a.

the operation of the demand-waiver rule. The demand-waiver rule was rejected as an ABA standard because:

> [T]here are a number of situations such as where the defendant is unaware of the charge or where the defendant is without counsel, in which it is unfair to require a demand.[9] Jurisdictions with a demand requirement are faced with a continuing problem of defining exceptions, a process which has not always been carried out with uniformity. More important, the demand requirement is inconsistent with the public interest in prompt dispositions of criminal cases. Consistent with the policies expressed in Part I of these standards, the trial of a criminal case should not be unreasonably delayed merely because the defendant does not think that it is in his best interests to seek prompt disposition of the charge.

Standards Relating to Speedy Trial § 2.2, commentary at 17 (1968), *citing* Note, *The Right to a Speedy Criminal Trial*, 57 Colum.L.Rev. 846, 854–55, 864–65 (1957).[10]

Since the *DeMille* holding only concerns whether counsel "knew or should have known" of Rule 45's operation, the major objection to the demand-waiver rule—protection of the ignorant unrepresented defendant—is satisfied. Further, since the "waiver" by counsel would only arise in the context of a trial-setting conference at which a specific trial date is set, there is little risk that the case would be unreasonably delayed merely because the defendant does not want to go to trial. *See Rutherford v. State*, 486 P.2d at 950. The results reached in *DeMille* and also *O'Dell* are therefore consistent with an earlier supreme court decision in *Peterkin v. State*, 543 P.2d 418 (Alaska 1975), that Criminal Rule 45 should be interpreted so as to ensure close court supervision over trial-setting. The court said in *Peterkin:*

> No criminal case should have the trial date cancelled without a new date being set. In this way the parties and their counsel will be aware of the trial as set in open court, and compliance with Rule 45 can be assured.

543 P.2d at 424 (footnote omitted).

Perhaps then recognition that treating failure to object to a continuance as a "waiver" would not result in "indefinite" delay or violate the *Peterkin* rule motivated the supreme court to initially adopt a forfeiture standard in *O'Dell*, 573 P.2d at 1384–85.

Finally, a forfeiture standard is not inconsistent with *Barker v. Wingo*, which adopts a true waiver rule to govern loss of the constitutional right to speedy trial.[11]

---

**9.** *See* Rule 45(d)(2) and ABA Standard 2.3(c) requiring notice to an unrepresented party of the effect of his consent to a continuance on his speedy trial rights to avoid an ignorant forfeiture. The implication is that where a defendant is represented by counsel consent will be deemed informed.

**10.** Current commentary to this standard states: "One reason for this standard's position is that '[t]he strict demand-waiver rule is harsh and clearly inconsistent with the constitutional doctrine of waiver.'" Standards Relating to Speedy Trial § 12–2.2, commentary at 18 (Approved Draft 1978), *citing* Erickson, *The Right to a Speedy Trial: Standards for Its Implementation*, 10 Hous.L.Rev. 237, 242–43 (1973). The constitutional doctrine of waiver does not, however, apply to the loss of rights under Rule 45. *See Snyder v. State*, 524 P.2d at 664.

**11.** *Barker v. Wingo* was decided at a time when the Supreme Court generally applied a "waiver" standard to the loss of constitutional rights. Most of its decisions utilizing a "forfeiture" standard were decided after *Barker*. It is important therefore to point out that the Supreme Court's rejection of forfeiture was somewhat qualified:

> We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his

The Court deemed the right fundamental, and protected it against loss without some inference of knowing conduct by the defendant. *Barker v. Wingo*, 407 U.S. at 525–27, 92 S.Ct. at 2189–90. Nevertheless, as the Alaska Supreme Court pointed out in *Snyder v. State*, 524 P.2d at 664:

> [W]e consider it appropriate to mention Snyder's contention regarding waiver of his right to speedy trial. Snyder asserts that the [express waiver of Rule 45 by his counsel] of May 26 was not legally effective since it was entered by counsel in his absence. [*Cf. Lee v. State*, 509 P.2d 1088, 1092 (Alaska 1973) (right to be present at trial cannot be "waived" by counsel unless defendant knowingly and intelligently joins therein); *Lanier v. State*, 486 P.2d 981, 988 (Alaska 1971) (right of cross-examination a trial right which counsel may waive on defendant's behalf).] We think this contention is answered by our decision in [*State v. Clouatre*, 516 P.2d 1189 (Alaska 1975)] where we said that Criminal Rule 45 is only a "basic datum" and that a considerably longer period could elapse before trial without resultant unfairness or injustice to the accused. The outer limits of Alaska's constitutional right to speedy trial are not defined by Rule 45. In short, we are of the view that our deci-

sions pertaining to waiver of fundamental constitutional rights are inapplicable in the factual context of the instant case to the Criminal Rule 45(d)(1) excluded period issue raised herein.

Finally, the other courts which permit a "waiver" based upon a defense failure to object to a trial setting beyond the prescribed period appear to utilize a forfeiture test. *See, e.g., Hodge v. State*, 264 Ind. 377, 344 N.E.2d 293, 294 (1976) (failure to object or call attention to the fact that trial was scheduled beyond the statutory limit waives right to discharge; no inquiry conducted behind the "waiver" to determine if it was an informed consent).[12]

The supreme court should therefore consider adopting a forfeiture standard to govern determination of *DeMille* waivers. The defendant and his attorney have no duty to demand a trial date. There is no reason, however, to excuse them from a duty to object to a trial date set by the court.

Placing the burden on the defendant to excuse his failure to object to a trial date accords with the supreme court's efforts to establish, to the extent possible, bright line rules for interpreting Rule 45. *See State v. Clouatre*, 516 P.2d at 1191. A diligent attorney preparing his or her case for trial will almost always discover the date on

---

client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely *pro forma* objection. 407 U.S. at 530, 92 S.Ct. at 2192 (footnote omitted).

Where a trial is scheduled, without objection by counsel, for a date close in time to the expiration of Rule 45, the court could well conclude that use of a forfeiture standard would strike a better balance between the defendant's legitimate interest in a timely trial and the exigencies of calendar control, particularly in rural Alaska. It is impossible to ignore the fact that Rule 45 dismissals resulting in freedom for the defendant without an adjudication of his guilt or innocence impose a tremendous price on the public in general. *But see State v. Williams*, 681 P.2d 313 (Alaska 1984) (dismissal with prejudice sanction for noncompliance with Rule 45 appropriate exercise of judicial rule-making power in light of policies which underlie right to a speedy trial).

**12.** A forfeiture standard is also consistent with the general approach taken by the supreme court in deciding Rule 45 questions. *See Coffey v. State*, 585 P.2d 514, 520–21 (Alaska 1978) (rule that affirmative steps to protect the right to speedy trial are not required is inapplicable to post-waiver situations, where affirmative steps may reasonably be required); *Henson v. State*, 576 P.2d 1352, 1355 n. 7 and 8 (Alaska 1978) (strong argument could be made that delay caused by nonappearance resulting from failure of defendant and his attorney to establish a thorough method of communication to assure defendant's presence when needed would be excluded under Rule 45); *Cooksey v. State*, 524 P.2d 1251, 1259–60 (Alaska 1974) (where defense requests psychiatric report resulting in delay, it shares responsibility with district attorney to bring psychiatric report to attention of trial judge so that case may be recalendared: "To hold otherwise would tend to transform the speedy trial rule into a hyper-technical device to be manipulated by an accused in order to escape the administration of justice.").

which his client was arrested or otherwise subjected to formal proceedings triggering commencement of the 120-day period. *See* *O'Dell*, 573 P.2d at 1384 (discussing events that begin operation of the rule). In the overwhelming majority of cases, therefore, an attorney who agrees to a trial date will know or should know the effect of that setting on the operation of Rule 45. Placing the burden on the defendant will therefore advance the policies of Criminal Rule 45. "To hold otherwise would tend to transform the speedy trial rule into a hyper-technical device to be manipulated by an accused in order to escape the administration of justice." *Cooksey v. State*, 524 P.2d 1251, 1259–60 (Alaska 1974).

A conclusion that an attorney may forfeit a defendant's rights under Alaska Rule 45 would not be tantamount to condoning ineffective assistance of counsel. *Risher v. State*, 523 P.2d 421 (Alaska 1974). See also *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (adopting test similar to *Risher* emphasizing prejudice to defendant as necessary to finding of ineffective assistance of counsel). In *Risher*, the court adopted a two-pronged test for ineffective assistance of counsel. The defendant must show that his counsel's performance fell below that of a lawyer with ordinary training and skill in the criminal law who seeks to protect his client's interest undeflected by conflicting considerations. In addition, the defendant must produce some evidence that his lawyer's ineffective representation contributed to the conviction. *Id.* at 424–25. Forfeiture of rights under Rule 45 does not satisfy the second prong of the *Risher* test. Assuming that the 120-day period has not already run at the time a trial date is chosen with counsel's acquiescence, an objection by defense counsel would simply result in an earlier timely trial date, not a

dismissal. Loss of an earlier trial date through counsel's action would not contribute to defendant's conviction. It is therefore not necessary to decide whether a forfeiture rule implicates the first prong of the test.

The supreme court should overrule *De-Mille* and its progeny and hold that defense acquiescence in a trial-setting does not waive the benefits of Rule 45. The court should also clarify any ambiguity in *O'Dell* by squarely holding that defense consent or failure to object to a continuance or formal waiver of Rule 45 does not extend the time limitations of the rule unless the trial court independently finds that the postponement is justified by good cause. These determinations by the supreme court would bring Alaska into conformity with the probable intentions of the drafters of the ABA standard upon which Rule 45 is based and the interpretation given the standard by almost every other court.

Alternatively, if the court is satisfied that interpretation of the rule in conformity with its drafters' intentions would unnecessarily reward attorney gamesmanship and unduly risk calendar manipulation, then the court should adopt a forfeiture standard and hold that failure to object to a trial date that violates Rule 45 precludes a subsequent objection to that trial date. Such a rule would have to recognize the plight of the attorney who truly has no way of knowing the application of the rule at the time of trial-setting by treating an expression of uncertainty as an objection.