Henry Louis RUSSELL, Jr., Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

No. 5159.

Court of Appeals of Alaska.

April 16, 1981.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

### OPINION

BRYNER, Chief Judge.

Henry L. Russell was convicted of assault and battery on June 6, 1978, following a jury trial in the district court. On appeal to the superior court, his conviction was affirmed; this appeal followed. Russell argues that he was denied his right to speedy trial under Criminal Rule 45.[1] He also contends that the trial court improperly denied a motion for continuance made on the opening day of trial.

## I. FAILURE TO DISMISS PURSUANT TO CRIMINAL RULE 45

Russell was arrested for assault and battery on May 5, 1977; he entered a plea of not guilty at his arraignment on May 10. An in-chambers conference[2] was scheduled for May 26, and Russell was referred to the office of pretrial services, which determines eligibility for appointment of the Public Defender Agency.

At his first in-chambers conference, Russell executed a standard form waiver of speedy trial. Thereafter, he appeared at a series of abortive in-chambers conferences, each apparently postponed at his request because he had not yet contacted pretrial services or otherwise arranged for an attorney. Ultimately, on July 7, 1977, a trial date was fixed for September 1, 1977; Russell had still not obtained an attorney.

When the date for trial arrived, Russell failed to appear; his bail was forfeited and a warrant was issued for his arrest. Some three and one-half months later, on December 14, 1977, he was arrested on the war-

James D. Oswald, Asst. Public Defender, Anchorage, and Brian Shortell, Public Defender, Anchorage, for appellant.

David G. Berry, Municipal Prosecutor, and Theodore D. Berns, Municipal Atty., Anchorage, for appellee.

1. Alaska R.Crim.P. 45 provides that a defendant must be tried within 120 days of his arrest, arraignment, or charge, but a number of delays are to be excluded in computing the 120-day period. Alaska R.Crim.P. 45(d). No constitutional speedy trial issue has been raised here.

2. The term "in-chambers conference" is somewhat misleading. Though scheduled by the court, in-chambers conferences are not formal court proceedings, but consist of meetings between the municipal prosecutor and the defendant or defense counsel conducted off the record at the prosecutor's office. Their function is to facilitate plea bargaining.

rant. He was rearraigned that same day, and the Public Defender Agency was appointed to represent him within several days.

There followed another series of conferences, all but one of which were continued at the request of defendant's counsel. Finally, on March 9, 1978, a trial was set for June 5, 1978.[3]

On the day of trial, Russell moved to dismiss, claiming that he had not been brought to trial within 120 days of his arrest as required by Alaska R.Crim.P. 45. The trial court computed the time under Rule 45 and concluded that, allowing for excluded periods, Russell had been brought to trial within 107 days of his original arrest. The court found valid the written waiver of speedy trial which Russell executed after his original arrest. On this basis the court excluded all time attributable to the continuances which occurred in the interval between Russell's original arrest and his first scheduled trial. The court further found all time between March 9 and June 5, 1978, to be excluded because of a notation on the calendaring slip from Russell's March 9 conference indicating that he had waived speedy trial.

■ Russell contests the court's exclusion of these periods. The municipality has responded by contending that there was justification for recommencing the full 120-day Rule 45 period upon Russell's rearrest. Though the trial court did not consider this argument, we are persuaded that under the circumstances of this case the 120-day period should properly have been commenced anew from the December 14, 1977, rearrest.[4]

Russell does not dispute that his avoidance of trial was intentional. Moreover, in the interval between Russell's original arrest and his failure to appear for trial, Russell displayed an almost total indifference to his case. Despite specific referrals by both the court and the municipal prosecutor, Russell failed to take even the preliminary steps necessary to obtain court appointed counsel. Because of Russell's inaction, no discovery requests were made, no pretrial motions were filed and apparently there was no meaningful discussion of a plea bargain; municipal prosecutors could do nothing but accede to a time-consuming series of continuances and endure a lengthy period of pretrial delay only to learn that Russell had no intention of appearing for trial.

■ Under these circumstances, it is inconceivable that the purposes of Rule 45, either in terms of legitimate protection of the rights of the accused or in terms of society's interest in swift justice,[5] could be furthered by allowing Russell to claim the benefit of any portion of the time elapsing prior to his rearrest on December 14, 1977.

Criminal Rule 45(d) provides, in pertinent part:

(d) *Excluded Periods.* The following periods shall be excluded in computing the time for trial:

. . .

(4) The period of delay *resulting from* the absence or unavailability of the defendant. A defendant should be considered absent whenever his whereabouts are unknown and in addition he is attempting to avoid apprehension or prosecution . . . . (emphasis added)

*Moss v. State*, 620 P.2d 674, 677 (Alaska 1980); *Rutherford v. State*, 605 P.2d 16, 21 n.12 (Alaska 1979); *Pistro v. State*, 590 P.2d 884, 888 n.13 (Alaska 1979).

3. The March 9 calendaring slip setting Russell's case for trial bears the notation "defendant has waived speedy trial". Since the conference at which this slip was written went unrecorded, and since the slip was apparently made out by a secretary from the prosecutor's office, it is entirely unclear who was present when the trial date was set or what the basis was for the notation concerning Russell's waiver of speedy trial.

4. In affirming the trial court's ruling, we are not bound by or restricted to the theory used by the trial court in arriving at its conclusion.

5. The primary purposes of Rule 45 are to minimize the hardship and anxiety of criminal charges pending against the accused over a prolonged period and to further the public interest in expeditious handling of criminal cases. *Ahmaogak v. State*, 595 P.2d 985, 987 (Alaska 1979); *Peterson v. State*, 562 P.2d 1350, 1358 (Alaska 1977).

The plain meaning of the phrase "the period of delay resulting from the absence . . . of the defendant" dictates the conclusion that this subsection encompasses more than the mere period of the accused's actual absence.[6] Common sense, if nothing else, tells us that the unanticipated failure to appear of a defendant can be expected to cause disruption and delay going beyond the period of the defendant's actual unavailability. Our conclusion is that the language of Rule 45(d)(4) recognizes this fact in its provision for an exclusion covering the period "resulting from the absence" of the accused. Accordingly we hold that "the period of delay resulting from the absence . . . of the defendant" includes not only the actual period of absence itself, but also all subsequent delay which is occasioned by and attributable to the absence.

In one of its earliest cases dealing with Criminal Rule 45, the Alaska Supreme Court held that the rule must be read in a manner which gives effect to its objective terminology. *State v. Clouatre*, 516 P.2d 1189, 1191 (Alaska 1973). In keeping with this holding, the court has repeatedly rejected arguments which would have required either an expansive or restrictive construction of the terminology of the rule.[7]

We believe our reading of Rule 45(d)(4) to be consonant with these prior holdings of the supreme court.

There is, of course, no precise mechanism for measuring the "delay resulting from the absence" of a defendant. We think, however, that reinstatement of the full 120-day period provided for by Rule 45 is justified in this case for two reasons. As we have already stated, the policies underlying Criminal Rule 45 would hardly be served by allowing Russell to take advantage of his own misconduct by claiming the benefit of the 119-day period which elapsed before his failure to appear for trial. More crucial is the reality that upon Russell's rearrest for failing to appear for trial all concerned—including the prosecution, the court system and Russell himself—stood in essentially the same position with respect to their ability to proceed to trial as they did immediately following Russell's original arrest.[8]

We emphasize that our decision today by no means implies that the entire Rule 45 period can properly be made to run anew any time a defendant fails to appear for trial or misses a scheduled court appearance.[9] The circumstances of this case are unusual, and the result we reach will be

**6.** Compare the phrase "period of delay resulting from the absence . . . of the defendant" as used in Rule 45(d)(4) with the more specific language: "[t]he period during which the defendant is incompetent to stand trial" (Rule 45(d)(1)) and the language: "[a] reasonable period of delay when the defendant is joined for trial with a codefendant" (Rule 45(d)(5)). We cannot presume that the drafters of Rule 45 were haphazard in their choice of language. The use of differing terminology with respect to distinct periods of exclusion mentioned in Rule 45(d) is, in our opinion, a strong indication that a restrictive reading of subsection (d)(4) limiting its application exclusively to the period of the defendant's actual absence would violate the intent of the rule.

**7.** *See, e. g., Spencer v. State*, 611 P.2d 1, 5–8 (Alaska 1980); *Mullins v. State*, 608 P.2d 764, 766–68 (Alaska 1980); *Vail v. State*, 599 P.2d 1371, 1379–80 (Alaska 1979); *Ahmaogak v. State*, 595 P.2d at 988–89; *Snyder v. State*, 524 P.2d 661, 663 (Alaska 1974); *State v. Clouatre*, 516 P.2d at 1191.

**8.** Russell's own unpreparedness for trial following his rearrest is forcefully evidenced by the

fact that his newly appointed public defender was required to make repeated requests for continuances of pretrial proceedings. We find it difficult, under the circumstances, to believe that Russell can in good faith maintain that he was prepared to go to trial within a period substantially shorter than 120 days following his rearrest.

**9.** Absence of the accused has not been included in Rule 45(c) as one of the circumstances under which recommencement of the full 120-day period is automatic. *See* Alaska R.Crim.P. 45(c)(2). Thus, recommencement of the full 120-day period in cases such as this will be warranted only upon a finding that the full period realistically approximates the delay occasioned by the defendant's failure to appear. In order to avoid last minute Rule 45 motions we strongly encourage trial courts, when faced with similar situations, to make specific findings as to the extent of excluded delay beyond the actual period of absence at the earliest practical opportunity following the defendant's rearrest or reappearance.

appropriate only in cases involving similar situations.[10] Our holding will apply where: (1) the defendant intentionally fails to appear for court; (2) his disappearance is followed by a substantial period of absence; and (3) by virtue of defendant's inaction no progress is made in the normal pretrial process before the defendant's disappearance.

■ The period of time between Russell's rearrest on December 14, 1977, and his trial on June 5, 1978, taking into account periods conceded by Russell to be properly excluded under Criminal Rule 45(d), totals less than 120 days.[11] We therefore conclude that the trial court properly denied Russell's motion to dismiss.[12]

## II. *DENIAL OF MOTION TO CONTINUE*

On the morning of trial, before court convened, the municipal prosecutor presented Russell's attorney for the first time with newly discovered police reports containing the name and address of one Steven David Triplett, an apparent witness to the incident which led to Russell's charge. Triplett's identity as a potential witness had not previously been disclosed to the defense and was not contained in other police reports made available to the defense during pretrial discovery. No statement had been taken from Triplett at the scene of the crime, and since the officer who originally contacted him had left the police force and the state, there was no way of determining what Triplett would have said as a witness.

Russell's attorney immediately moved for a continuance in order to contact Triplett and obtain his presence as a witness in Russell's behalf. Russell's attorney theorized that Triplett was a hitherto unidentified person referred to and described in police reports as having been present at the time of the assault. It was argued that if Triplett was the unidentified person he would be capable of giving testimony favorable to Russell.

■ Despite the strenuous argument of Russell's counsel that the last-minute revelation of Triplett's name was a violation of Criminal Rule 16[13] and that a continuance was the appropriate remedy for such violations, the trial judge denied the motion, and trial proceeded.[14]

---

10. Given the unique and unforeseeable circumstances presented by Russell's persistent inaction in securing counsel and his intentional failure to appear, we conclude that the delay in bringing him to trial can alternatively be justified under Rule 45(d)(7), which provides for exclusions of "[o]ther periods of delay for good cause." *Cf. Mullins v. State*, 608 P.2d at 766 n.5; *Peterkin v. State*, 543 P.2d 418, 423–24 (Alaska 1975).

11. The total time elapsed under Rule 45, allowing for excluded periods which are not disputed, was 118 days.

12. Our disposition of this issue makes it unnecessary to consider the issues which Russell raises with respect to the trial court's findings as to specific excluded periods.

13. Alaska R.Crim.P. 16 provides, in pertinent part:
    (b) *Disclosure to the Accused.*
    (1) [T]he prosecuting attorney shall disclose the following information within his possession or control to defense counsel and make available for inspection and copying:
    (i) The· names and addresses of persons known by the government to have knowledge of relevant facts and their written or recorded statements or summaries of statements . . . .

14. Although somewhat obscure, the court's reasoning appears to have been that, since the officer who contacted Triplett was no longer available and no written account of any statement made by Triplett existed, the municipal attorney and the officers on hand to testify did not "know" that Triplett was a person who had relevant facts concerning the incident as required by Alaska R.Crim.P. 16(b)(1)(i), and that there was therefore no duty on the part of the prosecutor to disclose Triplett's name.
    We specifically reject the trial court's reasoning. Alaska R.Crim.P. 16(b)(1)(i) cannot logically be read to require absolute certainty by the prosecution of a witness' awareness of relevant details before its duty to disclose becomes operative. Such a grudging reading is obviously contrary to the general scope and purpose of the rule, as set forth in Alaska R.Crim.P. 16(a):
    (a) *Scope of Discovery.* In order to provide adequate information for informed pleas, expedite trial, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protec-

It is well established that even an unintentional violation of Criminal Rule 16 normally entitles the defendant to a continuance of sufficient duration to remedy the violation.[15] For example, in *Des Jardins v. State*, 551 P.2d at 187, the court held:

> The proper procedure for a trial court faced with prosecution failure to disclose to the defense evidence that it is required to provide, until just before it plans to use such evidence, is to grant a continuance long enough to allow the defense attorney adequate time to prepare.

Accordingly, we conclude that the trial court abused its discretion and committed error in denying Russell's motion for continuance.

However, this conclusion is not dispositive:

> [E]rror alone is not enough to require reversal. It must appear that the refusal of additional time in some manner embarrassed the accused in preparing his defense and prejudiced his rights.[16]

Here, Russell maintains that he was prejudiced by being deprived of the opportunity to contact and produce Triplett as a favorable witness. For a number of reasons, we are unpersuaded by this claim.

First, the record indicates that Triplett's full name, Steven David Triplett, and his address were given to defense counsel immediately prior to trial. Neither during the trial nor on appeal has Russell claimed that Triplett's address was not a local one. Nor did Russell, at any time, represent that there was any apparent reason to believe that Triplett's address was no longer current or that there might be any particular difficulty in finding him. This trial lasted for two days, and the defense had not rested at the conclusion of the first day. We have been given no indication, either in the record or in the briefs, why Triplett could not have been located and interviewed in the evening following the first day of trial. In fact, the record fails to disclose any attempt at all on Russell's part to locate Triplett in time for the second day of trial. One day's time would normally be more than sufficient to produce a witness living in the Anchorage area. There is nothing to indicate that the circumstances here were unusual, and there is no showing of even a good faith effort to locate Triplett once his name and address had been disclosed.

Second, Russell's theory of prejudice depends heavily upon his attorney's theory that Triplett is in fact the unidentified person described in police reports as being present at the scene of the assault when it occurred. Police reports described this unidentified person as a young man wearing a white T-shirt. According to Russell's testimony at trial, this person would have corroborated his version of the incident, which was at odds with the trial testimony of arresting officers. Yet the theory that Triplett and the unidentified man in the white

---

tion of persons, effective law enforcement, and the adversary system.

Moreover, under the provisions of Criminal Rule 16(b)(4), the knowledge of the officer who contacted Triplett and noted down his name and address is in effect imputed to the prosecution. Alaska R.Crim.P. 16(b)(4) provides, in pertinent part:

> (4) *Information Within Possession or Control of Other Members of Prosecuting Attorney's Staff.* The prosecuting attorney's obligations extend to material and information in the possession or control of
>
> . . .
>
> (ii) any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office.

Thus, the departure of the officer who wrote down Triplett's name can hardly be construed as a basis for concluding that the prosecution had no duty to disclose Triplett's name and address prior to trial. The fair inference to be drawn from all the information in the record is that Triplett was a person who was present at the time of the incident which led to Russell's arrest and who would in all likelihood have been aware of relevant facts—whether favorable or unfavorable to the accused. Accordingly, we find that the trial court's determination that there was no duty to disclose Triplett's name was error.

15. *See, e. g., Williams v. State*, 600 P.2d 741, 742–43 & n.3 (Alaska 1979); *Des Jardins v. State*, 551 P.2d 181, 187 (Alaska 1976).

16. *Nielsen v. State*, 623 P.2d 304, 307 (Alaska 1981) (citations omitted).

T-shirt were one and the same person collapses entirely in light of Russell's own testimony at trial.

Testifying in his own behalf, Russell unequivocally indicated that he was personally acquainted with the man in the white T-shirt; that this man's first name was Bob, not Steven; that Bob was an employee of the Panhandle Cafe in Anchorage; and that Bob's parents were known by Russell to have owned the Panhandle Cafe at the time of the incident. Thus, Russell's own testimony dispels his attorney's theory that Triplett was the unidentified person described in police reports. More than that, it establishes that Russell already had ample information to locate and produce the unidentified man.

This leads to our third, and final, reason for concluding that the trial court's failure to grant a continuance was not prejudicial. In addition to the unidentified man known by Russell as Bob, there were numerous other eyewitnesses to the events which led to Russell's arrest. Some were acquaintances and friends of Russell's; at least one was a casual bystander whose name and address were provided to Russell in the police reports disclosed in pretrial discovery. None of these witnesses was called by Russell; no explanation was made for the failure to call these witnesses, and no claim whatsoever was advanced that any or all were unavailable.

Given the apparent availability to Russell of other witnesses, given Russell's own testimony indicating that he, and not the prosecution, possessed the information which might have led to the location of the one witness who purportedly would have corroborated his testimony, and given the fact that there is no basis for believing that Triplett, had he been called, could have testified in any way more favorably to Russell than any of the other eyewitnesses who were known to Russell, we must conclude that there would be no prejudice here even assuming that Triplett could not have been located by a diligent effort on Russell's part during the time available between the first and second days of trial.

On the basis of the foregoing considerations, and in light of the strength of the evidence adduced against Russell at trial, we find that the trial court's failure to grant a continuance constituted harmless error, whether considered under the standard established in *Love v. State*, 457 P.2d 622 (Alaska 1969), or under the more stringent standard made applicable to constitutional issues by *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The judgments of the superior and district courts are therefore AFFIRMED.