Lane CONWAY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–326.

Court of Appeals of Alaska.

Oct. 17, 1985.

---

Steve Cole, Asst. Public Defender, Kodiak, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and ·SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Lane Conway was convicted of burglary in the second degree. AS 11.46.310. He appeals, contending that he was denied his constitutional right to a speedy trial, his right to be tried within the 120–day period prescribed by Alaska Rule of Criminal Procedure 45, and his due process rights under the agreement on detainers act, AS 33.35 *et seq.* We affirm.

On February 8, 1980, Lane Conway burglarized a boat moored in the Kodiak harbor and took two handguns. He was apprehended in the act of leaving the scene by a Kodiak police officer and was arrested at that time.[1] Conway was subsequently indicted for burglary in the first degree. He was unavailable for his arraignment on April 11, 1980. On June 26, 1980, Conway

---

1. The trial court denied Conway's motion to dismiss on speedy trial grounds in an extensive memorandum decision specifically finding the relevant facts. Judge Madsen's fact findings are binding upon us unless clearly erroneous. *See* *Odekirk v. State,* 648 P.2d 1039, 1042–43 (Alaska App.1982). In this case, the defendant has not specifically objected to any of Judge Madsen's fact findings and consequently we will accept them as established in the record.

appeared for arraignment and signed an open-ended waiver of speedy trial.[2]

The record does not reflect when the November 20, 1980, trial date was established. It does appear, however, that Conway was considering a plea to the charge if he was not subject to presumptive sentencing. A pre-plea report and presentence investigation was commissioned on September 5, 1980, and a tentative date was established for a change of plea on October 6, 1980. Thereafter it was discovered that Conway would in fact be subject to presumptive sentencing and he decided to proceed to trial. The matter was set for trial during the week of November 17, 1980.

The public defender spoke with Conway on November 11, 1980, at which time he advised Conway of the trial date. The public defender also spoke with the defendant's girlfriend and an attorney who was representing Conway in Seattle. The public defender indicated that he had been informed by Conway's Washington counsel that Conway would be returning to Alaska and would be available for trial on November 26, 1980, or during June of 1981. The case was called for trial on November 20, 1980. Conway failed to appear, and a bench warrant was issued for his arrest.

Conway was arrested in the State of Washington on January 5, 1981, on unrelated charges, and the Washington authorities discovered the outstanding bench warrant issued for Conway's failure to appear for trial on November 20, 1980. Conway was informed at that time of the outstanding Alaska warrant.

On January 11, 1981, Alaska began extradition proceedings to obtain Conway for trial. On March 10, 1981, the Governor of

---

2. Conway argues that the waiver he signed on June 26 did not "completely" waive his speedy trial rights because it could not meet the test for a waiver of a constitutional right, *i.e.*, an intentional relinquishment of a known right, citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed 1461, 1466 (1938). In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court discussed waiver of the constitutional right to speedy trial. It said:

> We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely *pro forma* objection.

407 U.S. at 528–29, 92 S.Ct. at 2191, 33 L.Ed.2d at 115–16 (footnote omitted).

Conway was represented by counsel and, on counsel's advice, personally signed a written waiver without specifying a specific period of time during which the waiver would operate. For reasons that will be set out hereafter, we find that the periods of time in question could not constitute a denial of Conway's constitutional right to a speedy trial. It is therefore not necessary for us to determine whether the written waiver in this case satisfies Barker v. Wingo.

Of course, the constitutional doctrine of waiver has no applicability to a defendant's rights under Alaska Rule of Criminal Procedure 45. *Cf. James v. State*, 567 P.2d 298, 300 (Alaska 1977); *Snyder v. State*, 524 P.2d 661, 664 (Alaska 1974). *See generally Andrew v. State*, 694 P.2d 168, 172–80 (Alaska App.) (Singleton, J., concurring), *petition for hearing granted,* (Alaska, May 6, 1985).

In his concurring opinion in this case, Chief Judge Bryner makes a persuasive argument that, in the circumstances of this case, a defendant who is represented by counsel and who files a written open-ended waiver of his rule 45 rights forfeits those rights and may not thereafter seek dismissal on rule 45 grounds. *But see Peterkin v. State*, 543 P.2d 418, 424 (Alaska 1975) (no criminal case should ever be continued except to a day certain). While plausible, this argument, which gives effect to open-ended waivers, seems to conflict with the policy against stipulated continuances not supported by good cause. *See Andrew*, 694 P.2d at 172–80 (Singleton, J., concurring). We therefore do not decide the effect of Conway's initial written waiver.

Washington signed an extradition warrant directing Conway's return to Alaska. On March 19, 1981, Washington officials informed Alaska officials that, upon resolution of the Washington charges pending against Conway, he would be made available to Alaska.

On April 27, 1981, after pleading guilty to the Washington charges, Conway was sentenced to a maximum term of five years, the minimum term to be fixed by the Board of Prison Terms and Paroles. Under Washington law, the sentencing judge sets a maximum sentence, and thereafter a minimum sentence is set by the Board of Prison Terms and Paroles. Wash.Rev. Code § 9.95.040. The minimum term is to be set within six months of the date of the admission of the prisoner to the prison. The Alaska officials apparently expected that Washington would extradite Conway immediately after his minimum term was set.

Between May and June of 1981, the Alaska District Attorney cooperated with the Alaska Attorney General to work out an informal agreement for defendant's return pursuant to the Uniform Criminal Extradition Act. AS 12.70 *et seq.* During this period, Judge Madsen found that the Alaska Assistant Attorney General was negotiating with Washington officials for Conway's return under an informal "side agreement." Judge Madsen found that such an agreement had been reached and that Conway was to be returned to Alaska after a minimum sentence was set by the Washington parole board. On June 25, 1981, the Interstate Agreement on Detainers went into effect in Alaska. AS 33.35 *et seq.*

In the meantime, Conway, through his Washington counsel, attempted to work out an agreement whereby Conway's Alaska offenses would be considered in connection with his Washington sentencing and the Alaska charges would be dropped. The district attorney informed counsel in March of 1982 that the State of Alaska would not agree to this arrangement.

On January 8, 1982, the Alaska Attorney General's office received a letter from prison authorities in Washington indicating that Conway would not be released to Alaska officials until paroled. On February 3, 1982, Alaska responded to the Washington correspondence reiterating its desire to try Conway and filing a detainer. Thereafter on March 1, 1982, the district attorney in Kodiak corresponded with Conway's Washington attorney, reiterating his stance that Conway be tried in Alaska as soon as he could be obtained from the Washington authorities. Shortly thereafter, the Kodiak District Attorney wrote to the district attorney in Seattle requesting assistance in getting Conway back to Alaska on July 9, 1982, his good-time release date.

On July 10, 1982, Conway refused to be paroled to the Alaska detainer. In October of 1982, Conway formally objected to extradition in a *pro se* application for a writ of *habeas corpus.* On December 15, 1982, his application was supplemented by a more formal application for *habeas corpus* filed by Conway's Seattle attorney. It does not appear that the Washington courts ever heard Conway's application for *habeas corpus.* On January 12, 1983, Washington turned him over to Alaska authorities and he was returned to this state.

## DISCUSSION

At the outset, it is important to recognize that a defendant's conduct can influence his speedy trial rights in three related but distinct ways. First, he or she may waive or under certain circumstances forfeit the right to assert a speedy trial violation. *See, e.g., Andrew v. State,* 694 P.2d 168 (Alaska App.), *petition for hearing granted,* (Alaska, May 6, 1985). Second, he or she may trigger recommencement of the speedy trial period, losing the benefit of previously accrued time but retaining the right to bring a speedy trial claim. *See, e.g., Russell v. Anchorage,* 626 P.2d 586 (Alaska App.1981). Finally, he or she may engage in activities which result in time excluded from consideration under Rule 45, which does not forfeit his right to bring a

speedy trial claim or result in recommencement of the speedy trial period. All of these factors are present in this case. It is not necessary, however, for us to determine whether Conway's written waiver of speedy trial forfeits his right to make a speedy trial claim, because we are satisfied that Conway was brought to trial well within the 120–day period prescribed in Criminal Rule 45 after allowance is made for excluded periods.

Lane Conway was arrested on February 8, 1980 and charged with the instant offense. The 120–day period began to run on this date, subject to certain excluded periods. Alaska R.Crim.P. 45(b) and (c). Conway, however, shortly thereafter left the State of Alaska and negotiated through counsel with the state for a resolution of this case without trial. When negotiations broke down, trial was scheduled for the week of November 17, 1980. Despite notice of the trial setting, Conway did not appear, and he concedes his whereabouts were unknown until he was rearrested approximately two months later in January of 1981.

■ In *Russell v. Anchorage,* 626 P.2d 586 (Alaska App.1981), we dealt with a similar situation. We held that, under certain circumstances, a defendant's failure to appear for trial will result in recommencement of the Rule 45 period when he is rearrested. Our holding in *Russell* is limited to situations where:

1) the defendant intentionally fails to appear for court; 2) his disappearance is followed by a substantial period of absence; and 3) by virtue of defendant's inaction no progress is made in the normal pretrial process before the defendant's disappearance.

*Id.* at 590.

■ All three factors are present here. Conway intentionally failed to appear for court, and his disappearance was followed by a substantial period of absence, during which he was rearrested in another state. We believe this is an even more compelling case than *Russell* for recommencement of the 120-day period. Russell was not repre-

sented by counsel. Conway was represented by local counsel as well as Washington counsel during this entire period.

In *Russell,* the defendant was rearrested in Alaska and immediately available for trial at that time. In contrast, Conway was arrested in Seattle and not returned to Alaska until January of 1983. An argument could be made that Rule 45 should not recommence until Conway was returned for trial. Our analysis of Rule 45, however, leads us to decide instead that Conway's Rule 45 rights recommenced when he was arrested in Washington on January 5, 1981.

Criminal Rule 45(d) sets out certain periods of time which are to be excluded when determining whether the defendant was brought to trial within 120 days. Two are arguably relevant to our discussion here.

Criminal Rule 45(d)(4) provides:

The period of delay resulting from the absence or unavailability of the defendant. A defendant should be considered absent whenever his whereabouts are unknown and in addition he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence. A defendant should be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained or he resists being returned to the state for trial.

Also relevant is Criminal Rule 45(d)(6) which provides:

The period of delay resulting from detention of the defendant in another jurisdiction provided the prosecuting attorney has been diligent and has made reasonable efforts to obtain the presence of the defendant for trial. When the prosecution is unable to obtain the presence of the defendant in detention, and seeks to exclude the period of detention, the prosecution shall cause a detainer to be filed with the official having custody of the defendant and request the official to advise the defendant of the detainer and to inform the defendant of his rights under the rule.

These provisions were derived from the American Bar Association Project on Standards for Criminal Justice, Standards Relating to Speedy Trial (Approved draft 1968). *Peterson v. State*, 562 P.2d 1350, 1357 (Alaska 1977). As we noted in *Neitzel v. State*, 655 P.2d 325, 327 (Alaska App. 1982), where a drafter adopts a statute or rule from another jurisdiction, what he amends, modifies, or changes is highly significant in determining his intent. Criminal Rule 45(d)(4) is virtually identical to A.B.A. Standard 2.3(e). In contrast, Criminal Rule 45(d)(6) differs substantially from A.B.A. Standards 3.1 and 3.2.[3] Criminal Rule 45(d)(6) provides:

The following periods shall be excluded in computing the time for trial: ...

The period of delay resulting from detention of the defendant in another jurisdiction provided the prosecuting attorney has been diligent and has made reasonable efforts to obtain the presence of the defendant for trial. When the prosecution is unable to obtain the presence of the defendant in detention, and seeks to exclude the period of detention, the prosecution shall cause a detainer to be filed with the official having custody of the defendant and request the official to advise the defendant of the detainer and to inform the defendant of his rights under this rule.

The commentary to the sections from which this provision is derived makes it clear that the A.B.A. Standard gives the prosecutor an election when charges are pending against someone incarcerated in a penal institution: The prosecutor must either undertake to obtain the presence of the prisoner for trial by, for example, instituting extradition proceedings or filing a *habeas corpus* petition with the court in the jurisdiction in which the prisoner is incarcerated, seeking the defendant for purposes of trial, or the prosecutor must file a detainer with the appropriate officials and request that the defendant be made aware of the detainer.[4]

---

3. A.B.A. Standard 3.1 provides:

Prosecutor's Obligations; notice to and availability of prisoner.

To protect the right to speedy trial of a person serving a term of imprisonment either within or without the jurisdiction, it should be provided by rule or statute and, where necessary, interstate compact, that:

(a) If the prosecuting attorney knows that a person charged with a criminal offense is serving a term of imprisonment in a penal institution of that or another jurisdiction, he must promptly:

(i) undertake to obtain the presence of the prisoner for trial; or

(ii) cause a detainer to be filed with the official having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

(b) If an official having custody of such a prisoner receives a detainer, he must promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs such official that he does demand trial, the official shall cause a certificate to that effect to be sent promptly to the prosecuting attorney who caused the detainer to be filed.

(c) Upon receipt of such certificate, the prosecuting attorney must promptly seek to obtain the presence of the prisoner for trial.

(d) When the official having custody of the prisoner receives from the prosecuting attorney a properly supported request for temporary custody of such prisoner for trial, the prisoner shall be made available to that prosecuting attorney (subject, in cases of interjurisdictional transfer, to the traditional right of the executive to refuse transfer and the right of the prisoner to contest the legality of his delivery).

A.B.A. Standard 3.2 provides:

Computation of Time.

The time for trial of a prisoner whose presence for trial has been obtained while he is serving a term of imprisonment should commence running from the time his presence for trial has been obtained, subject to all the excluded periods listed in section 2.3. If the prosecuting attorney has unreasonably delayed (i) causing a detainer to be filed with the custodial official, or (ii) seeking to obtain the prisoner's presence for trial in lieu of filing a detainer or upon receipt of a certificate of demand, such periods of unreasonable delay should also be counted in ascertaining whether the time for trial has run.

4. In the commentary to § 2.2, the drafters of the standard explain why it is not inconsistent to eliminate the requirement that a defendant generally demand trial in order to trigger commencement of his speedy trial rights but require a demand from someone who is incarcerated if he or she is to preserve a right to speedy trial:

Special procedures are set forth in Part III of these standards for those cases in which

■ In contrast, under the Alaska rule, at least where charges are pending against someone who is detained outside this jurisdiction, the prosecution must attempt to obtain that person's presence for trial, and only if those attempts fail may a detainer be filed. The Alaska rule therefore expressly incorporates a requirement rejected by the A.B.A. Standards. In the commentary to the standards, the following may be found:

> Such action by the prosecuting attorney [recourse to Uniform Criminal Extradition Act or the written request provisions of the Interstate Agreement on disposition of detainers] is required *only* in those instances in which the prisoner has demanded trial. In this respect, the standard conforms to the provisions of the Uniform Mandatory Disposition of Detainers Act and the Interstate Agreement. It has been argued, however, that the prosecutor should be required to act even absent demand. This is currently the rule in a number of states as to prisoners within the jurisdiction, ... although most of the cases extending the right to speedy trial to prisoners outside the jurisdiction have held that a prisoner aware of the charges must make a demand. Implicit in a number of the cases not requiring a demand from the prisoner is the notion that the prisoner may not have been adequately apprised of the fact that charges were outstanding against him or that no available routine for making demand existed. In view of the fact that the standard does require notice to the prisoner of the charges and does establish a procedure for making demand, it is appropriate to limit the prosecutor's responsibility for proceeding

to those cases in which a demand is made. Absent a desire by the prosecutor to go to trial, the prisoner then retains the option of demanding trial in order to overcome whatever disadvantages may flow from the fact a detainer has been lodged against him or of not making the demand in the hope that the charges will be dropped before or at the time he completes his sentence.

Standards Relating to Speedy Trial § 3.1(c) commentary at 36–38 (Approved Draft 1968) (footnotes and citation omitted). With this significant departure from the A.B.A. standards in mind, we may now consider the application of Rule 45 to the facts of Conway's case.

Conway was arrested on February 8, 1980, triggering commencement of the 120–day period. Alaska R.Crim.P. 45(c). When he failed to appear for trial on November 20, 1980, his Rule 45 rights lapsed and the 120-day period commenced anew on January 5, 1981, when Conway was arrested in Washington. *Russell*, 626 P.2d at 588–90.

■ The period from January 5, 1981, until April 27, 1981, when Conway was sentenced on the Washington charges, constituted a period of delay resulting from trial of other charges, which is excluded from determination of the 120-day period under Criminal Rule 45(d)(1). The record reflects that the state commenced timely extradition procedures under the Uniform Extradition Act. Judge Madsen did not abuse his discretion in concluding that the period between April 27, 1981, and September 21, 1981, when the parole board set a minimum term for Conway, was a period

the person charged with a crime is serving a term of imprisonment on another offense either within or without the jurisdiction. These procedures establish channels of communication whereby the prosecuting attorney may notify the prisoner of the charge against him and whereby the prisoner may demand trial on the charge. Although it is there provided that the prosecutor need not proceed to trial unless the prisoner makes a demand, that provision is not inconsistent with the general no-demand policy set forth above. The pris-

oner should have the option (1) of demanding trial in order to overcome whatever disadvantages may flow from the fact a detainer has been lodged against him, or (2) of not making the demand in the hope that the charges will be dropped before or at the time he completes his sentence. Such is the view taken in the Uniform Mandatory Disposition of Detainers Act and in the Interstate Agreement on Detainers. [Citations omitted.]
Standards Relating to Speedy Trial, § 2.2 commentary at 17–18 (Approved Draft 1968).

during which Conway was unavailable by virtue of executive decisions of the Washington authorities.

■ Finally, the period from July 10, 1982, the good-time release date on Conway's Washington sentence, until January 12, 1983, when the Washington authorities turned Conway over to Alaska authorities for return to this state, constituted "other proceedings concerning the defendant," Alaska R.Crim.P. 45(d)(1), and a period during which Conway was resisting being returned to the state for trial. Alaska R.Crim.P. 45(d)(4). Conway's refusal to accept parole to the detainer and his subsequent actions in filing a *pro se* writ of *habeas corpus*, supplemented by his attorney's formal application for writ of *habeas corpus*, clearly constituted resistance.[5]

■ Judge Madsen apparently concluded that the Washington officials delayed informing Alaska officials of the setting of Conway's minimum parole period and that Alaska reasonably relied at least until January of 1982, on the expectation that Conway would be turned over to them when he was paroled. Judge Madsen reasoned,

From the record, it is unclear when the District Attorney finally realized that Washington wasn't going to make the Defendant available after his minimum parole was set. He probably wasn't positive the Defendant would not be returned after parole was set after January, 1982, when he received the letter from Mr. McVicers [Washington correctional official]. The detainer was filed promptly thereafter. The Defendant was promptly informed of the detainer and, given the fact that he was represented by Washington counsel, it is reasonable to assume he knew what was going on and

chose not to exercise his right under Art. III of the [Interstate Agreement on Detainers].

Judge Madsen's conclusions are not clearly erroneous.

■ Finally, Judge Madsen appears to have concluded that the Washington officials' refusal to comply with the Washington governor's extradition warrant constituted an exercise of their right to delay extradition under both the Uniform Extradition Act and the Interstate Agreement on Detainers and that any effort to force the issue with Washington would have been unavailing. Conway argues and we agree that "the possibility of a refusal [of extradition] is not the equivalent of asking and receiving a rebuff." *Smith v. Hooey*, 393 U.S. 374, 382, 89 S.Ct. 575, 579, 21 L.Ed.2d 607, 614 (1969), *quoting Barber v. Page*, 381 F.2d 479, 481 (10th Cir.1967) (Aldrich, J., dissenting). Here, however, Alaska had formally asked, in the form of obtaining an extradition warrant from the Governor of Washington, and had been rebuffed by the Washington correctional officials' indication that they would honor the warrant at the time of Conway's release. *See Prince v. Alabama*, 507 F.2d 693, 704–05 (5th Cir. 1975) (attempts at extradition in the nature of satisfying state's obligation to take affirmative action to secure the presence of someone incarcerated outside the state). Viewing the totality of the circumstances, Judge Madsen was not clearly erroneous in concluding that the state exercised due diligence in attempting to return, Conway to the state, satisfying the requirement of Criminal Rule 45(d)(6).

■ Conway next argues that, independent of Rule 45, his constitutional right to a

---

5. Conway argues that his refusal to be paroled to the detainer, supplemented by the applications for writs of *habeas corpus*, cannot be deemed "resistance" because they do not meet the constitutional test of waiver of a known right. Conway has confused waiver or forfeiture of the right to assert a speedy trial violation with conduct which causes excludable delay. For example, a person who files a motion to suppress on fourth amendment grounds does not thereby forfeit a speedy trial claim but the

time necessary to resolve the suppression issue is excluded from consideration under Criminal Rule 45. By the same token, a person who refuses to waive extradition and institutes a *habeas corpus* proceeding to contest extradition does not thereby waive or forfeit his right to make a subsequent speedy trial challenge, but the time necessary to resolve his challenges to extradition are excluded from consideration under Criminal Rule 45. *See* Standards Relating to Speedy Trial § 2.3(e) commentary at 30.

speedy trial was violated. In *Barker v. Wingo*, 407 U.S. 514, 530–32, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101, 117–18 (1972), the Supreme Court set up a four-factor test for analyzing constitutional speedy trial claims. It directed courts to look to: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. In analyzing these factors, the Supreme Court pointed out:

> [N]one of the four factors ... [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Barker v. Wingo*, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118–19.

█ The length of delay in this case, viewed realistically, is the time from September of 1981, when Conway's minimum parole period was established, until January of 1983, when he was returned to Alaska, a period of sixteen months. During the intervening time, Conway never asserted a right to speedy trial. In fact, it would be more accurate, borrowing the language of the A.B.A. Standard, to say that Conway exercised "the option of ... not making the demand [for trial] in the hope that the charges will be dropped before or at the time he completes his [Washington] sentence." Standards Relating to Speedy Trial § 3.1(c) commentary at 37–38 (Approved Draft 1968). In fact, Conway's failure to appear when trial was set in November of 1980, his diligent efforts through counsel to compromise the claim so he need not return to Alaska, his refusal to accept parole to the detainer or waive extradition, and his filing of *habeas corpus* motions to

oppose extradition clearly establish that Conway did not want a speedy trial in Alaska. The delay caused by the time required to obtain extradition was also exacerbated by Washington's lack of enthusiasm for transferring Conway to Alaska prior to completion of Conway's Washington sentence.

We should also look at prejudice to the defendant. Conway does not argue any specific prejudice, though he does contend that the passage of time may have made it more difficult for him to find witnesses with memories of the event. Given the fact that Conway was caught in the act of leaving the allegedly burgled vessel, that counsel was immediately appointed, an arraignment held, and a timely trial date scheduled, it is difficult to see how the passage of time has hindered his defense. We note that Conway admitted the substance of the Kodiak charges in connection with the proceedings in Washington. In summary, weighing all of the factors established in *Barker v. Wingo*, we are satisfied that Conway has not established a violation of his constitutional right to speedy trial.

█ Finally, Conway argues that he was denied due process of law under the Fourteenth Amendment to the United States Constitution and Article I, § 7 of the Alaska Constitution because the state did not supplement its extradition proceedings with a specific request for return of Conway under the Interstate Agreement on Detainers. Conway misunderstands the purpose of the Interstate Agreement on Detainers. As the commentary to the A.B.A. Standard points out, the agreement gives the state the option but not the duty of requesting extradition. The primary function of the Interstate Agreement on Detainers is to give the defendant a means, if he wishes to exercise it, of compelling the state to return him for retrial.

Despite the fact that Conway was represented by Alaska and Washington counsel throughout these proceedings, and that Washington counsel was vigorously negotiating on his behalf, Conway never sought to utilize the means set out in the Inter-

state Agreement on Detainers to compel the state to try him. Under the circumstances, he suffered no due process violation because the state did not exercise its permissive right to request his presence.

The judgment of the superior court is AFFIRMED.

BRYNER, Chief Judge, concurring.

After executing a waiver of his Criminal Rule 45 speedy trial rights, Conway left the state of Alaska and failed to appear for trial. He was subsequently arrested in Washington and thereafter seems to have done all that was in his power to prevent being returned to Alaska for trial. While I do not suggest that open-ended waivers should forfeit all rights under Criminal Rule 45 on all occasions, it seems to me that Conway's conduct falls precisely within the fair contemplation of his speedy trial waiver. I would therefore dispose of Conway's Criminal Rule 45 arguments by holding that he has forfeited his right to rely on the rule. In addressing Conway's nonconstitutional arguments on their merits, I think the majority of the court makes the mistake of unnecessarily deciding novel and complicated issues of statutory construction that have been presented in an unusually confusing and incomplete factual setting.

For these reasons, I concur in the result reached by the court on Conway's Criminal Rule 45 arguments. I join in the court's resolution of Conway's constitutional claim.