Ernest James PETERKIN, Appellant,

v.

STATE of Alaska, Appellee.

No. 2235.

Supreme Court of Alaska.

Dec. 1, 1975.

Lawrence J. Kulik and Phillip P. Weidner, Asst. Public Defenders, Herbert D. Soll, Public Defender, Anchorage, for appellant.

Stephen G. Dunning, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and BURKE, JJ.

ERWIN, Justice.

Appellant Ernest Peterkin was indicted, tried, and found guilty of the crime of assault with a dangerous weapon.[1] In this appeal Peterkin asserts that the superior court erred in not dismissing the indictment because the trial took place more than four months after arrest, in violation of Criminal Rule 45,[2] Alaska's speedy trial rule. Both the background of the case and the proceedings below are important in the manner that they show a violation of Rule 45 and so that they may provide a structure to avoid this problem in future cases.

## I. FACTUAL BACKGROUND

For purposes of this appeal, the factual summaries of either side do not vary in material regard. Briefly, two groups were seated at adjacent tables at Rondon's, an Anchorage nightclub, in the early morning hours of March 17, 1972. One foursome included the victim, Edward Thorn, a six-foot four, 200-pound man, and his friend Paul Lastufka, also a physically imposing person. The other foursome was composed of Peterkin, a small man of 20 who wore his long hair in a ponytail; Dennis Elstad, also slight, clothed in black leather pants and white boots, with shoulder-length hair; and two other young men.

The Thorn group, apparently amused at the appearance of Peterkin and his friends, began to ridicule them openly and loudly, calling them girls or homosexuals. At one point Thorn held the flame from a cigarett lighter near Elstad's hair. One of Thorn's friends testified that Thorn was quite drunk and in a foul mood.

Thorn and his friends left the nightclub first. Once outside, Thorn and Lastufka removed their jackets and waited near the entrance. Thorn then called to one of his drinking companions who was leaving, "Come on back, we're going to have a knuckle session." Soon Peterkin, Elstad and a third man started through the door. Lastufka advanced down the walkway toward Peterkin, who promptly drew his gun and fired a warning shot into the ground. Thorn then grabbed Elstad, placing a hammerlock around his neck. When Peterkin threatened to shoot Lastufka unless his friend was released, Thorn threatened to break Elstad's neck. Peterkin fired, hitting Thorn in the head and destroying a portion of his brain. As a result of this incident, Thorn cannot communicate and responds only minimally to his environment.

At trial Peterkin claimed self defense and defense of a third person; the jury evidently found the force excessive as he was convicted of assault with a dangerous weapon.

---

1. AS 11.15.220 reads as follows:

   *Assault with dangerous weapon.* A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment in the penitentiary for not more than 10 years nor less than six months, or by imprisonment in jail for not more than one year nor less than one month, or by a fine of not more than $1,000 nor less than $100.

2. Alaska Criminal Rule 45 provides in part:

   .    .    .    .    .

   (b) A defendant charged with either a felony or a misdemeanor shall be tried within four months from the time set forth in section (c).

   (c) The time for trial shall begin running, without demand by the defendant, as follows:

   (1) From the date the defendant is arrested, initially arraigned, or from the date the charge . . . is served upon the defendant, whichever is first.

   .    .    .    .    .

   .    .    .    .    .

   (d) The following periods shall be excluded in computing the time for trial:

   .    .    .    .    .

   (3) The period of delay resulting from a continuance granted at the timely request of the prosecution, if:

   (a) The continuance is granted because of the unavailability of evidence material to the state's case, when the prosecuting attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at the later date; or

   .    .    .    .    .

   (7) Other periods of delay for good cause.

## II. DETERMINATION OF SPEEDY TRIAL VIOLATION

On April 18, 1973, Peterkin moved for dismissal of the charges against him, based on an asserted Rule 45 violation. He alleged that since his indictment on March 30, 1972, he had stipulated to continuances of 90 and 60 days, and that subtracting these periods, over seven months had elapsed. The state responded that its

> failure to press this matter to trial resulted from the belief of J. Justin Ripley [the District Attorney] that the defendant had waived his right to speedy trial. While the state wishes to emphasize that no allegation of bad faith is made nor any such implication intended, the state does contend that its belief that no speedy trial issue existed was created and fostered by defense counsel.

Mr. Kay, Peterkin's attorney, denied that he had in any way fostered such a belief and averred that he only discovered the Rule 45 violation shortly before he moved for dismissal. The District Attorney acknowledged responsibility:

> It's a total error on my part, Your Honor, because I believed, and my belief arose from my contacts with Mr. Kay, that there was no problem. . . . [T]he necessity for such a hearing to make a record and demand a waiver did not occur to me. . . . I let this case get in the shape it is because of my contacts with Mr. Kay in which, as he said, certainly not deliberately, but he himself was unaware that there was a speedy trial problem. . . .

Further, the District Attorney noted that he also contemplated settlement negotiations and wished to delay the trial until Spring for two of the State's witnesses to return from college.

The trial judge dismissed the charges, and the State petitioned for review. This court vacated the dismissal and remanded for a hearing to determine whether the physical condition of the victim was the reason for the delay, and whether this constituted good cause with Rule 45(d)(3)(a), (d)(7).[3] Specifically, the superior court was ordered to determine the probable date that the victim's physical condition had stabilized.

The hearing was held on July 20, 1973. Dr. Crawford, Thorn's treating physician, testified that from late May through July of 1972, Thorn emitted periodic verbal responses which were "on occasion appropriate, but frequently inappropriate, but articulate." At this point Thorn was still being fed through a tube. Dr. Crawford stated that Thorn could not possibly have testified at any time up until the present. Had the doctor been asked for a prognosis in June of 1972, he believed that

> I would have probably stated that if his present rate of recovery continued that there would have been a good probability of his being able to appear in court within 6 months or so.

Unfortunately, Thorn regressed, and the utterances ceased after July. Dr. Crawford believed that if asked on October 1, he could have indicated no realistic hope of recovery:

> At that point he was showing signs of what I call plateauing, that is, a sharp improvement had more or less ceased, things were—he was showing little signs of future improvement at that point. I think at that point I would have been in a position of saying that it would have been very doubtful if he would have been able to appear as a witness . . . within the foreseeable future.

The finding of the trial court on the issue of whether the disability of Thorn was the cause-in-fact of the failure to bring Peterkin to trial is somewhat ambiguous. The court found that the "physical condition of the victim . . . was a consideration in the continuance of the case." However, the court did not specify during what period Thorn's condition operated as a delaying factor.

The initial stipulated continuance of June, 1972, refers to Thorn's condition as a hindrance to both sides. However, there was no evidence presented at the hearing

3. See note 2, *supra*.

to the effect that the District Attorney entertained any expectation of Thorn's recovery after the continuance expired in mid-September. The District Attorney informed the court that he had by then formed an intention to go forward without Thorn:

District Attorney: I was assigned this case, as best I can reconstruct it, in the late fall. I think I sent in my affidavit August 15. . . . And upon making the inquiry as to Edward Thorn's condition, let us say in the late fall of 1972, I don't recall consciously making the determination that this was a triable case without him. *On the other hand, I must have formulated that otherwise we would have long since dismissed the case.* We were preparing to go forward hoping for the presence of Edward Thorn, but prepared, if necessary, to go forward without him. (Emphasis supplied)

Now, I submit, Your Honor, that the reasons this case was not brought on for trial—there are many considerations, but the reasons that there was no panic as far as I'm concerned is principally through my contact with defense counsel. . . . I was in a state of false security with respect to the 4-month rule; there's no question about that.

The second stipulation for a continuance, effective November 8, 1972, was entered because Mr. Kay was teaching law school for a term in Arizona; it makes no mention of Thorn's condition.

A fair reading of the record indicates that the judge did not intend his remark to be a full-blown finding that Thorn's injury was the factual cause of delay throughout the entire period. Were it so taken, it would be devoid of evidentiary support.

No such ambiguity exists in the trial court's finding regarding the second question posed by this court in its remand, *i. e.,* did Thorn's condition constitute good cause for delay? The trial judge found that a

timely hearing on the issue of the medical realities of the victim's plight would have indicated that "there's not much hope of having [Thorn] as a witness."

Mr. Kay: I take it the court is then finding that the reason for the delay, or at least part of the reason for delay, was the physical condition of the victim and that that is a good cause for delay.

The Court: Well, in the sense that if that's—if I've got to follow the language of the rule, I'll follow it, but that's not my—I haven't found that it's good cause in the sense that people used good judgment. I found that it's reasonable to expect that people could arrive at the decision the district attorney did in this case, but I might not necessarily have done it myself under the circumstances. In other words, I am in effect saying that everybody should come in here before the 4-month rule is over and tell the court what the situation is and they didn't do it. In other words, I've tried to—without following the language of the supreme court which I don't feel I can do under the facts in this case, I've found that I don't think under the circumstances it should be dismissed. That there was no intentional delay, there was no purposeful delay on anybody's part, they just used bad judgment.

The court subsequently amplified its holding that no good cause for delay existed:

The Court: [T]here's no question it was a cause for delay but it was not good cause after about September of that year.

The trial judge was apparently influenced by the fact that the delay, though unjustified, was not due to bad faith on the part of the State. In *Rutherford v. State,*[4] similar analysis was discounted:

The state . . . argues that since this is "not an example of a case where delay has been obtained by the prosecu-

---

4. *Rutherford v. State,* 486 P.2d 946, 950 (Alaska 1971).

tion," there is no violation of appellant's right to a speedy trial. We disagree. We are unable to see how this offers any comfort to appellant, who suffers the same anxiety and lessened ability to defend herself either way. Why there should be a different rule for harm impersonally inflicted as opposed to harm directly attributable to the prosecution is unexplained in logic.

It appears that the actual reason for the trial judge's refusal to dismiss the case was his firm conviction that defense counsel and the prosecution share an equal obligation to inform the court of all relevant developments in a case and to expeditiously demand a speedy trial:

> . . . I think both of them [the District Attorney and Mr. Kay] had a concurrent obligation to come in and ask that it be put to trial and I'm making a holding now that the defendant has as much obligation as the district attorney to come in and get a trial date set.

The court seemed to realize that in terms of Alaska law, this was something of an anomaly.

> The Court: I've blown down the four-month rule here now, I might as well open it up and see what happens when it goes up.

■ If the issue of a demand by the defendant as a condition precedent to a speedy trial violation was once a topic for lively debate in Alaska, the final gavel fell in *Rutherford v. State:* [5]

> [W]e feel it is too much to expect of human nature that a defendant must demand a speedy trial . . . under our system of criminal justice, it is the prosecution which initiates a case and which has the power of going forward with it. . . . To condition that duty on a defendant's having demanded constitutional compliance is, in our view, an unacceptable misallocation of the burden of insuring a speedy trial. We, therefore, reaffirm the position announced in *Glasgow* that the burden is upon the state to give a speedy trial or be denied the power to prosecute. (footnote omitted)

Although *Rutherford* was constitutionally based[6] and Alaska Criminal Rule 45 is not,[7] the Alaska rule provides that, "The time for trial shall begin running, *without demand by the defendant* . . . ."[8] (Emphasis supplied) As recently stated by this court, "We believe the rule will work fairly if it is applied according to its objective terminology."[9] Thus, for purposes of determining whether a speedy trial violation existed in this case, it was not relevant that Peterkin failed to demand a trial and the trial judge erred in considering it necessary.[10]

The State now contends that all time between the arrest on March 18, 1972, and October 1, 1972, when the permanence of Thorn's condition was clear, should

5. *Id.* at 950. *See also, State v. Mardock*, 490 P.2d 1223 (Alaska 1971).

6. U.S.Const. Amend. VI: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * *." Alaska Const. Art. I, § 11, "In all criminal prosecutions, the accused shall have the right to a speedy and public trial."

7. *Snyder v. State*, 524 P.2d 661, 664 (Alaska 1974).

8. *See* note 2, *supra.*

9. *State v. Clouatre*, 516 P.2d 1189, 1191 (Alaska 1973).

10. The ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, § 2.2, commentary at p. 17 (adopted February 19, 1968), is in accord with this position:
> the demand requirement is inconsistent with the public interest in prompt disposition of criminal cases . . . the trial of a criminal case should not be unreasonably delayed merely because the defendant does not think that it is in his best interest to seek prompt disposition of the charge.

Moreover, legal scholars are almost unanimous in their condemnation of the demand rule. See, e. g., Note, The Right to Trial, 20 Stan.L.Rev. 476, 479–80, 1968; Note, The Lagging Right to a Speedy Trial, 51 Va.L.Rev. 1587, 1601–10 (1965); 8A J. Moore, Federal Practice ¶ 48.04[1], at 48–19 (2d ed. 1970).

be excluded because the State could have obtained continuances under Rule 45(d)(3)(a),[11] even though they neglected to file the appropriate papers to do so. Also, the State contends that the month of October and first week of November should be excluded to assure that Thorn's condition had really stabilized. Given the second stipulated continuance which runs into January of 1973, this would leave 88 days, and no speedy trial violation. The State also argues that even if the court does not exclude October, only 127 non-excluded days elapsed, and in the circumstances at bar the extra few days should be considered de minimis.

Assuming for the moment that all time before October 1 may be excluded, a substantial violation of the 120-day rule has still occurred in this case. There is no reason to exclude the month of October, for it falls after the latest date on which the court found good cause for delay to exist. Furthermore, the state counts the second stipulation as lasting 74 days, whereas it in fact appears to exclude 60 days only, with a provision for an additional two weeks should the State have scheduling difficulties. The order continued the matter for 60 days only, and both signatories to the stipulation refer to its duration of 60 days. Thus the non-excluded period after October 1 totals 141 days.

This brings us to another facet of the instant appeal, namely whether the physical condition of the victim constitutes good cause within Rule 45(d)(7) absent a motion for a continuance under Rule 45(d)(3)(a). The remand previously ordered by this court suggests that even though the State failed to move for a continuance due to the disability of a material witness as allowed by Rule 45(d)(3)(a), such unavailability can still constitute good cause under Rule 45(d)(7). Given the trial court's holding that such good cause, if any, expired in September of 1972, and the fact that more than 120 days elapsed after that date, the determination of whether a contingency expressly contemplated in one section of the rule should fall within the safety net of Rule 45(d)(7) if the State fails to act, will not be dispositive herein. However, the issue is a significant one and demands our attention at this time.

The drafters of the ABA Standards for Speedy Trials believed that the proper bases for delay should be enumerated in the speedy trial statute or rule of procedure, because states with only general "good cause" provisions have found their discretionary task a difficult one.[12] Nonetheless, the drafters thought it politic to append to the list of excluded periods a hedge against the unforeseen:

> [I]t is desirable that the basic policy questions involved in determining what periods of delay before trial are necessary be resolved by statute or rule insofar as is possible. [The enumerated exclusions] are believed to be the best solutions to the commonly recurring policy questions. There will occasionally arise a unique situation not covered . . . in either a permissive or prohibitive sense, and thus it is necessary to recognize expressly a residual discretionary power in the trial judge to deal with such a situation.[13]

The situation in the case at bar is neither unique nor unforeseen, and it is covered in a permissive sense by Rule 45(d)(3)(a). The rule envisions that a timely motion will be made, and that the burden will be upon the State to show reasonable grounds for belief that the evidence will become available. *State v. Robinson.*[14] This procedural protection is diluted if the State may safely ignore the

---

11. See Note 2, *supra.*

12. ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, § 2.2, p. 15.

13. *Id.* at 32.

14. 101 Ariz. 221, 223, 418 P.2d 377, 379 (1966).

motion requirement, let time run beyond the 120-day period, and then rely on a post hoc adjudication, with full benefit of hindsight, under the residual "good cause" category. Therefore, we find that the relief for the State, if any, must come from outside Rule 45.

■ Rule 53, the catch-all provision for the criminal rules, is the appropriate provision to deal with situations such as that presented by the instant case. Rule 53 provides:

> These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice.

Reliance on Rule 53 will assure that no grave inequities are perpetrated where non-compliance with one of the enumerated exclusions found in subsections (1) through (6) of 45(d) is justifiable or excusable. In addition, the utilization of Rule 53 will avoid application of Rule 45(d)(7), the "good cause" exclusion, in cases where it was not intended. Of course, the determination of whether the District Attorney's failure to request a continuance under 45(d)(3)(a) can be excused by applying Rule 53 will have no effect on the outcome of this case. Even if Rule 53 did apply herein, only that time prior to October of 1972 would be excluded in computing time, because by October, 1972, it was certain that Thorn would not be able to testify at the trial and the State could not have obtained additional continuances under 45(d)(3)(a). As previously indicated, 141 days elapsed after October 1, 1972; thus, regardless of the applicability of Rule 53, Peterkin's right to a speedy trial was violated.

We take this occasion to express the view that close court supervision is necessary to avoid problems exemplified by this case. No criminal case should have the trial date canceled without a new date being set. In this way the parties and their counsel will be aware of the trial date as set in open court, and compliance with Rule 45 can be assured.[15]

This process cannot be left to chance encounters or implicit understandings among counsel no matter how well founded or well meaning; the court process is involved and the court must exercise control over it. The control over the criminal trial calendar requires the use of safeguards to guarantee that the pre-trial procedures will be carefully monitored and that failsafe techniques will bring to light cases which approach the 120-day limit.[16] In this way *no case* will be dismissed for failure to comply with the speedy trial provisions of Criminal Rule 45.

This case is reversed and remanded with instructions to dismiss the indictment with prejudice.[17]

---

15. The public also has an interest in swift justice. The deterrence and rehabilitation purposes of the criminal law are poorly served when the trial is not reasonably contemporaneous with the wrongful acts. Warren E. Burger, Chief Justice of the Supreme Court of the United States, The State of the Judiciary—1970, an address before the 1970 ABA's Annual Meeting, as reported in 56 A.B.A.J. 929, 931–32 (1970).

16. As stated by the Supreme Court of the United States: "the essential ingredient is orderly expedition and not mere speed."

*Smith v. United States*, 360 U.S. 1, 10, 79 S. Ct. 991, 997, 3 L.Ed.2d 1041, 1048 (1959).

17. Crim.Rule 45(g) provides:
*Absolute Discharge.* If a defendant is not brought to trial before the running of the time for trial, as extended by excluded periods, the court upon motion of the defendant shall dismiss the charge with prejudice. Such discharge bars prosecution for the offense charged and for any other lesser included offense within the offense charged.