Alexander Joseph KELLER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8544.

Court of Appeals of Alaska.

Feb. 6, 2004.

Michele Power, Angstman Law Office, Bethel, for the Appellant.

Jean E. Seaton, Assistant District Attorney, Gregg Olson, District Attorney, Bethel, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Alexander Joseph Keller was charged in the Bethel district court with the offense of driving while intoxicated. Keller's father was a bailiff for the Bethel court. Bethel Magistrate Craig R. McMahon and the two resident judges in Bethel, Superior Court Judges Dale O. Curda and Leonard R. Devaney, all recused themselves because of their association with Keller's father. Keller's case was ultimately assigned to a Fairbanks judge, District Court Judge Raymond M. Funk. The question presented in this appeal is whether these judicial recusals and reassignments affected the calculation of the time limit for bringing Keller to trial under Alaska's speedy trial rule, Criminal Rule 45.

Criminal Rule 45 states that a defendant must be brought to trial within 120 days, not counting the various excluded periods defined in subsection (d) of the rule. In the present case, the Rule 45 clock was triggered on July 5, 2002, when the criminal charge was served on Keller.[1] Thus, July 6th was

---

1. *See* Criminal Rule 45(c)(1).

Day 1 for Rule 45 purposes.[2]

Keller and the State agree that, for purposes of deciding this case, the Rule 45 clock stopped on November 6, 2002—the day on which Keller filed his motion to dismiss the criminal charge because of the asserted violation of Criminal Rule 45. November 6th was Day 124.

Both parties further agree that, aside from the recusals of the three judges and the ensuing judicial reassignments, no events tolled the running of Rule 45 between July 6th and November 6th. Thus, the question is whether these judicial recusals tolled the running of Rule 45 for four or more days. If so, then Keller was brought to trial within the 120 days specified in the rule. If not, then the charge against Keller must be dismissed with prejudice, pursuant to Rule 45(g).

The State offers two alternative rationales for tolling Rule 45 on account of the three judicial recusals. First, the State argues that the time attributable to these recusals is an excluded period under Rule 45(d)(1), the portion of the rule that excludes any "period of delay resulting from other proceedings concerning the defendant". Second, the State argues that the time attributable to the three recusals can be excluded under Rule 45(d)(7), the residual clause that allows a court to exclude a period of time "for good cause", even when that period of time is not excluded under any other provision of Rule 45(d).

We do not reach the State's first argument (that the time attributable to the judicial recusals should be excluded under Rule 45(d)(1)). Rather, we decide Keller's case on an alternate ground. We conclude that when (as in Keller's case) all of the judges who reside in the place of venue specified by Criminal Rule 18 are disqualified, thus requiring the assignment of a judge from another community, this situation constitutes "good cause" for a delay of a criminal trial under Rule 45(d)(7). We further conclude

that, in Keller's case, at least four days of delay can properly be attributed to the fact that his case had to be reassigned to a judge from outside Bethel. This means that Keller was brought to trial within the time limits of Rule 45.

*A judge's duty of recusal under AS 22.20.020 and Canons 2 and 3 of the Alaska Code of Judicial Conduct: instances of actual partiality, and instances which create a reasonable appearance of partiality*

One of the foundations of our criminal justice system is the requirement that fair and unbiased judges preside over litigation. This requirement is codified in AS 22.20.020(a)(9), which declares that a judge "[shall] not act in a [legal] matter" if the judge concludes "for any reason" that they can not render "a fair and impartial decision" in that matter.

Although this precept is sometimes referred to as the "right to an impartial tribunal",[3] the requirement of a fair and unbiased judge is more than simply a right enjoyed by the parties. When judges conclude that it is impossible for them to be fair and impartial in a particular case, they have a duty to recuse themselves from that case—even when no party to the litigation has raised the issue. See AS 22.20.020(c), which envisions judicial disqualification "on the [judicial] officer's own motion". Moreover, this duty of recusal binds the judge even when the parties announce that they are willing to ignore the judge's inability to be fair and impartial. Canon 3F(1) of the Alaska Code of Judicial Conduct declares:

A judge shall not seek or accept a waiver of disqualification when the judge has a personal bias or prejudice concerning a party or a lawyer [involved in the case, or] when, for any other reason, the judge believes that he or she cannot be fair and impartial. . . .

■ In addition, a judge's duty of recusal encompasses not only those cases in which the judge actually can not be fair and unbi-

2. *See* Criminal Rule 40(a): "Except as otherwise specifically provided . . . , in computing any period of time, the day of the act or event from which the designated period of time begins to run is not to be included."

3. *See, e.g., Amidon v. State,* 604 P.2d 575, 577 (Alaska 1979).

ased, but also those cases in which the judge's participation would lead reasonable people to question the fairness of the proceedings. See *Amidon v. State*, 604 P.2d 575, 578 (Alaska 1979), which holds that judges must disqualify themselves "in [any] proceeding in which [their] impartiality might reasonably be questioned".

The *Amidon* decision was based on former Alaska Judicial Canon 3(C)(1). However, this same precept—disqualification or recusal based on a reasonable appearance of partiality—is codified in Canons 2A and 3E of Alaska's current Code of Judicial Conduct. Judicial Canon 2A states that a judge shall "avoid impropriety and the appearance of impropriety". The Commentary to Canon 2A states that the test for gauging an "appearance of impropriety" is "whether the [judge's] conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired". Judicial Canon 3E(1) echoes this rule: "Unless all grounds for disqualification are waived as permitted by [Canon] 3F, a judge shall disqualify himself or herself in [any] proceeding in which the judge's impartiality might reasonably be questioned".

*The counter-balance: a judge's duty to carry out their judicial function if there is no valid ground for disqualification*

Although the law requires judges to recuse themselves (or to grant a party's request for disqualification) when they conclude that they can not be fair and impartial, the law at the same time requires judges to remain assigned to the case, and to carry out their normal judicial functions, when there is no valid ground for disqualification. As the supreme court stated in *Amidon*, "[A] judge has as great an obligation not to disqualify himself, when there is no occasion to do so, as he has [an obligation to disqualify himself] in the presence of valid reasons." 604 P.2d at 577. This Court explained this counterbalancing duty in *Feichtinger v. State*:

Judges will frequently be assigned cases involving unpleasant issues and difficult problems. Often litigants and their attorneys will be particularly vexatious. In many cases, publicity adverse to the judge is virtually certain no matter what decision he or she reaches. In such cases, judges insufficiently attuned to their responsibilities might readily welcome a baseless request for recusal as an escape from a difficult case. To surrender to such a temptation would justly expose the judiciary to public contempt based on legitimate public concern about judicial integrity and courage. While we agree that judges must avoid the appearance of bias, it is equally important to avoid the appearance of shirking responsibility.

779 P.2d 344, 348 (Alaska App.1989).

*Why we conclude that the four-day delay in bringing Keller to trial is excused under Rule 45(d)(7)*

■ As we have already explained, Keller's case was assigned to three different Bethel judges. One after another, each judge recused himself because of his professional relationship with Keller's father. Ultimately, Keller's case had to be assigned to a judge from outside the Bethel community (*i.e.*, a judge from Fairbanks).

For purposes of calculating a defendant's speedy trial deadline, the "normal" excluded periods are codified in Criminal Rule 45(d)(1)-(6). None of these six provisions expressly includes the time attributable to a judicial disqualification.

As explained in the concurring opinion, there is reason to believe that a judicial recusal qualifies as a "proceeding concerning the defendant" under Rule 45(d)(1). However, rather than decide that point of law, we conclude instead that the series of judicial recusals in Keller's case constitutes "good cause" for delay of Keller's trial under Rule 45's residual clause, (d)(7).

Any judge, but especially judges in smaller communities, will from time to time be assigned to a case which involves people whom the judge knows. In these situations, a judge must not only gauge their personal feelings about the people involved in the litigation, but must also gauge how the community would likely perceive the judge's decision to remain on the case.

This can be a delicate matter. For instance, in Keller's case, the underlying prob-

lem was that Keller's father worked as a bailiff for the court. The first three judges assigned to Keller's case (the three judges who subsequently recused themselves) had to assess not only whether they personally believed that they could be fair, but also such imponderables as whether rulings favorable to Keller would be perceived as favoritism, or whether rulings unfavorable to Keller would be perceived as the judge's effort to placate the State, "bending over backwards" not to demonstrate favoritism.

When a judge is assigned to a case long in advance of trial, the judge may consider these issues and initially conclude that it is proper for them to participate in the case, only to change their mind as the approaching trial date forces a sharper consideration of the potential appearance of partiality. And obviously, when a judge is assigned to a criminal case following the recusal or disqualification of a prior judge, that second judge would have no occasion to consider the issue of recusal until the judge knew that they were assigned to the case.

Here, three judges recused themselves, one by one, until it was necessary to assign a Fairbanks judge to Keller's case. This Fairbanks judge (District Court Judge Raymond M. Funk) assumedly already had his own trial calendar. The addition of Keller's case meant that, unexpectedly, Judge Funk's calendar had to be adjusted to accommodate a criminal trial that had to be conducted in another city.

In analogous circumstances, we have held that the Rule 45 calculation should presumptively be extended by 30 days. In *Sundberg v. State*, 667 P.2d 1268 (Alaska App.1983), we held that 30 days should be added to a defendant's Rule 45 calculation when the defendant's case is returned to the jurisdiction of the trial court following an interlocutory appeal:

> Common sense leads us to conclude that a trial court cannot immediately plug a case into its trial calendar after a remand. Some time is needed to ensure that the remanded case is worked into the trial calendar; the calendar may already contain a number of criminal cases equally entitled to consideration under Criminal Rule 45. In addition, the prosecution will need a reasonable time to [marshal] its witnesses, whether local or out of state, and adjust the remanded case to its own calendar of criminal cases, some of which may have Criminal Rule 45 claims.... [A] reasonable time should be allowed the court and prosecution to get the case back on the calendar before Criminal Rule 45 begins to run again after remand from the appellate court.

*Id.* at 1270. We held that, under these circumstances, 30–days should presumptively be added to the Rule 45 calculation (*i.e.*, even in the absence of specific proof that a 30 day delay was required). *Id.*

Similarly, in *Petersen v. State*, 838 P.2d 812 (Alaska App.1992), we held that 30 days should presumptively be added to the Rule 45 calculation when a defendant entered a no contest plea but then, several months later, withdrew the plea and demanded a trial. We concluded that this situation was like the one presented in *Sundberg*, because "it would be unreasonable to expect the trial court, upon reinstatement of active prosecution, to be capable of immediately reinstating [the defendant's] case on the trial calendar". *Id.* at 815.

Of course, *Sundberg* and *Petersen* involved delays that were attributable to the defendant's actions. Thus, even when events unexpectedly place a criminal trial on a judge's calendar, one could argue that the policy of *Sundberg* and *Petersen* should not apply when those events are not set in motion by the defendant.

Keller, in fact, makes this very argument. He asserts that Rule 45(d)(7) should not be construed to exclude periods of time that are "out of [a defendant's] control". We interpret Keller to be arguing that Rule 45(d)(7) should not exclude a period of time unless that period of time is attributable to the defendant's act or request.

But several provisions of Rule 45(d) exclude periods of time that are not attributable to events that the defendant has set in motion. For instance, Rule 45(d)(1) expressly excludes the time attributable to "examinations and hearings on competency" as well

as "the period during which the defendant is incompetent to stand trial". It is true that examinations and hearings on competency are sometimes initiated by the defendant, but they can also be instituted by the State— and, more importantly for present purposes, they can be instituted by the court acting sua sponte.[4] In *Burks v. State*, 748 P.2d 1178, 1180 (Alaska App.1988), this Court held that "[regardless of whether] the issue of [the defendant's] competency was raised by his court-appointed counsel [or] by the [trial] court sua sponte, ... the time necessary to determine [the defendant's] competency was properly excluded" from the Rule 45 calculation.

Rule 45(d)(1) likewise excludes the delay attributable to "trial of other charges"—*i.e.*, other criminal proceedings brought by the State (or, potentially, by another government). Here again, Rule 45(d)(1) exempts time that is not attributable to actions or proceedings initiated by the defendant.

See also Rule 45(d)(3), which allows the prosecution to seek additional time to bring the defendant to trial when material evidence is unavailable despite the State's diligent efforts, or when the State's case is of exceptional complexity. And see Rule 45(d)(6), which excludes the time attributable to the defendant's detention in another jurisdiction, provided the State has made diligent efforts to secure the defendant's timely return to Alaska.

We therefore conclude that even though Keller did not initiate the three judges' recusals (*i.e.*, even though the three judges recused themselves sua sponte rather than in response to defense motions challenging the judges' ability to be fair), this fact does not bar those judicial recusals from constituting "good cause" under Rule 45(d)(7) for the delay in bringing Keller to trial.

Keller also argues that, if we construed Rule 45(d)(7) to excuse the delay in bringing him to trial, we would "effectively extend[ ] the meaning of 'good cause' to [include] periods of delay resulting from scheduling errors on the part of the court". But it is no "scheduling error" when judicial officers conclude that they must recuse themselves because they are actually biased, or because their participation in the case would create a reasonable perception of bias.

Finally, Keller argues that the "good cause" provision of Rule 45(d)(7) should not apply to his case because the court system should be prepared for judicial recusals and should have procedures in place to ensure prompt re-assignment of a defendant's case in such circumstances, so that the trial can still take place within the normal time limits of Rule 45.

Keller points out that in *Peterkin v. State*, 543 P.2d 418 (Alaska 1975), and again in *DeMille v. State*, 581 P.2d 675 (Alaska 1978), the supreme court ruled that trial courts are under a duty to "[establish] safeguards to guarantee that pre-trial procedures will be carefully monitored and that failsafe techniques [will be instituted that] will bring to light [any] cases which approach the 120–day limit."[5] Keller further notes that, in *DeMille*, the supreme court apparently rejected the notion that delays in holding criminal trials could be justified by court system errors in scheduling cases.[6]

Based on *Peterkin* and *DeMille*, Keller argues that a court can no longer rely on judicial "mistakes" to justify the delay in bringing a defendant to trial. In particular, Keller contends that he "should not bear the burden of the [recusing] judges' mistakes" in his case.

We again must disagree with Keller's characterization of what went on here. Judges' decisions to recuse themselves are not "mistakes". Moreover, as we have already noted, a judge has no occasion to decide whether they can ethically preside over a particular case until that case is assigned to them. Thus, the second and third judges assigned to Keller's case did not need to think about the question of recusal until a large portion

---

4. *See* AS 12.47.100(b), which recognizes that competency proceedings can be initiated by the court "upon its own motion".

5. *Peterkin*, 543 P.2d at 424.

6. *See DeMille*, 581 P.2d at 677–78.

of the time allowed by Rule 45 had already elapsed.

If we construed Rule 45(d) as Keller suggests, so that the speedy trial clock continued to run during the time attributable to a judge's recusal, this would pressure judges to ignore good reasons for their recusal. In Keller's case, for instance, the second and third judges assigned to his case might reasonably have feared that their decision to recuse themselves would ultimately result in a violation of Rule 45—meaning that the charges against Keller would be dismissed with prejudice.

It is often difficult enough for judges to decide whether they should recuse themselves. We must not construe Rule 45 in a way that makes dismissal of criminal charges the consequence of a judge's decision to fulfill their ethical duty.

It may be true that the court system should have procedures in place to assure prompt re-assignment of criminal cases when judges recuse themselves. Further, in multi-judge court locations, if a judge's recusal were announced early enough in the litigation, the recusal might occasion no more than one day's delay—the time needed to issue the recusal decision and then to assign a new judge, one who had plenty of time to work the new case into their calendar.

But Keller's case is considerably different. Here, three separate local judges recused themselves, making it necessary to summon a judge from Fairbanks to preside over Keller's case. Leaving aside the issue of whether Rule 45 should be tolled for all judicial recusals, we are confident that whenever, as here, judicial recusals make it necessary to assign a defendant's case to a judge from another location, the resulting delay constitutes "good cause" under Rule 45(d)(7).

In *Sundberg* and in *Petersen*, we held that an additional 30 days should presumptively be added to the Rule 45 calculation when a criminal case is unexpectedly inserted into a judge's trial calendar following the resolution of an interlocutory appeal or following the defendant's decision to withdraw a previous guilty plea. We need not decide whether to follow the same 30-day rule in situations like the one presented in Keller's case—because Keller's case involves a delay of only four days, and because there was a manifest need for at least a four-day delay after the three Bethel judges recused themselves and a Fairbanks judge had to be assigned to Keller's case.

*Conclusion*

We hold that the four-day delay in bringing Keller to trial is excused under Rule 45(d)(7). Accordingly, the judgement of the district court is AFFIRMED.

MANNHEIMER, Judge, concurring.

I write separately to point out that the Alaska Supreme Court has already held that defense motions for judicial disqualification are excluded from the speedy trial calculation under Rule 45(d)(1). I also wish to explain why there is reason to believe that the time attributable to a judicial recusal—*i.e.*, a judicial disqualification that is imposed sua sponte rather than in response to a request from a party—may also be excluded from the speedy trial calculation under Criminal Rule 45(d)(1).

*The Alaska Supreme Court has already held that a defendant's peremptory challenge of a judge, and a defendant's challenge for cause against a judge, are both "proceedings concerning the defendant" within the meaning of Criminal Rule 45(d)(1)*

Before addressing the question of whether a judicial recusal constitutes a "proceeding concerning the defendant" for purposes of Rule 45(d)(1), I turn first to a related question: Does a defense challenge to a judicial officer (either a challenge for cause or a peremptory challenge) constitute a "proceeding concerning the defendant" for purposes of Rule 45(d)(1)?

Criminal Rule 45(d)(1) states that the Rule 45 clock is tolled during "[t]he period of delay resulting from other proceedings concerning the defendant". In his brief to this Court, Keller argues that the potential bias or partiality of the trial judge does not "concern" the defendant, at least within the. meaning of that phrase in Rule 45(d)(1). Keller argues that "a judge's recusal [affects]

the defendant [only] to the same extent that it [affects] the state", and that "[i]t would strain the meaning of [Rule 45(d)(1) ] to argue that a judge's recusal 'concerns' the defendant under this provision".

No Alaska appellate decision explicitly answers the question of whether a judge's sua sponte disqualification is a "proceeding concerning the defendant" for purposes of Rule 45(d)(1). However, the Alaska Supreme Court's decision in *Peterson v. State*, 562 P.2d 1350 (Alaska 1977), implicitly rests on the proposition that a defense challenge to a judicial officer is a "proceeding concerning the defendant" under Rule 45(d)(1).

The defendant in *Peterson* was arrested for murder on December 23, 1974.[1] (At that time, a defendant's arrest triggered the running of Rule 45.)[2] Peterson's trial was scheduled for May 8, 1975.[3] However, on May 8th, Peterson initiated a series of challenges (both challenges for cause and peremptory challenges) to the judges assigned to his case.

First, Peterson challenged Superior Court Judge Eben Lewis for cause. Judge Lewis denied that challenge, and his decision was then reviewed and affirmed by Superior Court Judge Peter Kalamarides.[4] After Peterson lost his challenge for cause, he filed a peremptory challenge of Judge Lewis. Judge Lewis granted this peremptory challenge, and the case was re-assigned to Superior Court Judge Ralph Moody.[5] But as soon as Judge Moody took over the case, Peterson challenged Judge Moody for cause. Judge Moody denied that challenge, and his decision was then reviewed and affirmed by Superior Court Judge Seaborn Buckalew.[6] Again, after losing the challenge for cause, Peterson filed a peremptory challenge of Judge Moody. But Judge Moody denied

that challenge because Peterson had previously exercised a peremptory challenge against Judge Lewis. (Under Alaska Criminal Rule 25(d), a defendant is entitled to but one peremptory challenge).[7]

Following this string of judicial challenges, Peterson filed a motion to dismiss the charges against him for violation of his right to a speedy trial under Rule 45.[8] When this motion was denied, Peterson filed motions to dismiss his indictment because of various alleged improprieties at the grand jury proceedings, and because of pre-indictment delay.[9] On June 25, 1975, when the superior court ruled against Peterson on all these motions, Peterson entered no contest pleas to the charges against him, preserving his right to raise all of these issues on appeal—and, in particular, his Rule 45 claim.[10]

In other words, Peterson's trial was scheduled for May 8, 1975, but the trial was delayed first by a series of judicial challenges and, later, by a series of motions seeking dismissal of the charges. The importance of this procedural history becomes apparent when one examines the supreme court's discussion of Peterson's Rule 45 claim.

There were 136 days between Peterson's arrest on December 23, 1974, and the scheduled trial date of May 8, 1975. The supreme court declared that the issue to be decided in Peterson's case was whether there was a valid excuse for scheduling Peterson's trial "136 days after Peterson's arrest".[11] That is, the supreme court's Rule 45 calculation is premised on the conclusion that the Rule 45 clock stopped running on May 8th. And this would be true only if Peterson's series of judicial challenges tolled the running of Rule 45.

The supreme court did not specify why they concluded that Peterson's four judicial

**1.** *Peterson*, 562 P.2d at 1356.

**2.** See the text of the former version of Rule 45(c)(1), quoted in *Peterson*, 562 P.2d at 1356.

**3.** *Peterson*, 562 P.2d at 1356.

**4.** *Id.* at 1355.

**5.** *Id.*

**6.** *Id.*

**7.** *Id.*

**8.** *Id.*

**9.** *Id.* at 1356.

**10.** *Id.*

**11.** *Id.*

challenges (two for cause, and two peremptory) tolled the running of the rule, but there are only two possibilities: either the court considered these challenges to be "proceedings concerning the defendant" under Rule 45(d)(1), or the court believed that these challenges constituted "other ... good cause" under Rule 45(d)(7).

I believe that the supreme court's silence on this issue is a fair indication that they believed Peterson's challenges were covered by (d)(1). The supreme court has been cautious when interpreting (d)(7)'s residual clause, out of concern that an overbroad construction of (d)(7) would defeat the policy of the speedy trial rule.[12] If the supreme court had believed that it was necessary to invoke subsection (d)(7) to make May 8th the stopping date in Peterson's case, one would expect the court to have discussed this issue explicitly. Instead, the court adopted the May 8th date with essentially no discussion.

From all of this, I conclude that the supreme court implicitly held in *Peterson* that a defendant's challenges to a judicial officer (whether challenges for cause or peremptory challenges) constitute "proceedings concerning the defendant" for purposes of Rule 45(d)(1)—and that the delay attributable to these challenges is excluded from the Rule 45 calculation.

*Why judicial recusals—that is, judicial disqualifications that are imposed sua sponte—may likewise constitute "proceedings concerning the defendant" within the meaning of Criminal Rule 45(d)(1)*

The next question is whether Rule 45(d)(1) applies to situations in which the challenge to the judicial officer is self-generated—that is, situations in which a judicial officer, unprompted by either of the parties, concludes that he or she should be disqualified from participation in the proceeding.

Keller argues that Rule 45(d) should not be construed to exclude periods of time that are out of a defendant's control. He contends that time should not be exempted under Rule 45(d)(1) unless the triggering action or event was initiated by the defendant—and,

thus, that the rule should not cover judicial disqualifications that are initiated sua sponte. But, as the majority opinion explains, Rule 45(d)(1) expressly encompasses some periods of delay that are not attributable to actions or events instigated by the defendant—for example, delay attributable to competency proceedings and the trial of other criminal charges. Accordingly, the sua sponte nature of the judicial disqualification is not an impediment to categorizing it within Rule 45(d)(1).

The remaining question is whether there is some other reason to believe that Rule 45(d)(1) includes a defense motion to disqualify a judge but does not include a judge's sua sponte disqualification.

There appears to be no material distinction between situations in which the defendant questions the judge's ability to be fair and situations in which the judge raises this question sua sponte. The issue of a judge's ability to be fair is similar to the issue of the defendant's competency, in that both are essential to the criminal proceeding. If the judge can not be fair, or if the defendant is incompetent to stand trial, the trial can not go forward. This is true even if the defendant wishes to proceed to trial despite these flaws. Thus, the law allows any participant in the litigation (the defendant, the state, or the judge) to raise either of these issues.

Under Rule 45(d)(1), the time attributable to competency examinations and hearings is expressly excluded from the speedy trial calculation, even when the defendant opposes the litigation of the competency issue. This same policy suggests that the time attributable to an assessment of the judge's ability to be fair should also be excluded from the Rule 45 calculation, regardless of whether the inquiry is initiated by the defendant (as was the case in *Peterson*), or by the prosecutor, or by the judge (as in Keller's case).

Moreover, if Rule 45(d)(1) were construed so that it covered judicial disqualifications initiated by the defendant (as in *Peterson*) but did not cover judicial recusals (*i.e.*, disqualifications initiated by the judge), this

---

12. *See, e.g., Peterkin v. State,* 543 P.2d 418, 423 (Alaska 1975), suggesting that Rule 45(d)(7) was included in Rule 45 to handle situations that were "unique [or] unforeseen".

would discourage judges from complying with their duties under Judicial Conduct Canon 3E and AS 22.20.020. As the majority opinion explains, judges may have a difficult time assessing whether they should recuse themselves in a particular case. Rule 45(d) should not be interpreted in a way that makes judges' decisions substantially more difficult—by confronting judges with the dilemma that adherence to their ethical duty might result in violation of the speedy trial rule, thus barring the government from prosecuting the defendant.

For these reasons, a good argument could be made that the holding in *Peterson*—the holding that a defense-initiated challenge to the trial judge is a "proceeding concerning the defendant" under Rule 45(d)(1)—should be extended to instances in which the judge's disqualification arises from recusal. However, under the facts of Keller's case, such an argument is moot—because (as explained in the Court's main opinion) the four extra days in Keller's case are excused under Rule 45(d)(7).